**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS**

| | |
|---|---|
| MICROGRAFX, LLC, | |
| Plaintiff, | |
| v. | Civil Action No. 3:13-cv-03599 |
| SAMSUNG TELECOMMUNICATIONS AMERICA, LLC; SAMSUNG ELECTRONICS AMERICA, INC.; SAMSUNG ELECTRONICS CO., LTD. | |
| Defendants. | |

**SAMSUNG'S BRIEF IN SUPPORT OF ITS MOTION TO DISQUALIFY MATTHEW
POWERS, STEVEN CHERENSKY, AND THE TENSEGRITY LAW GROUP AS
COUNSEL FOR MICROGRAFX AGAINST SAMSUNG IN THIS CASE**

## TABLE OF CONTENTS

INTRODUCTION ...................................................................................................1

FACTUAL BACKGROUND..................................................................................3

I.      THE PARTIES.................................................................................................3

II.     THE INSTANT CASE ....................................................................................4

III.    FACTS REGARDING POWERS, CHERENSKY, AND TENSEGRITY ........4

        A.     Powers and Cherensky Received Samsung's Confidential Information in the Course of their Decade Long Relationship with Samsung and its Most Senior IP Team Members and Executives ................................................4

        B.     Powers and Cherensky Have Confidential Knowledge About The Specific Technology and Products At Issue In This Case ....................................7

        C.     Powers And Cherensky Formed Tensegrity Law Group to Handle Plaintiffs' Cases Like This One on Contingency—And Never Reached Out To Samsung For a Conflict Waiver ..............................................12

        D.     Tensegrity's Attorneys Have Been Tainted By Working With Powers and Cherensky To Develop This Case..........................................................13

LEGAL STANDARD............................................................................................14

ARGUMENT .......................................................................................................15

I.      IT IS REASONABLY PROBABLE THAT TENSEGRITY WILL USE SAMSUNG'S CONFIDENTIAL INFORMATION TO SAMSUNG'S DISADVANTAGE IN THIS CASE....................................................................15

        A.     Powers and Cherensky Possess Samsung's Most Sensitive Patent Litigation, Licensing, and Settlement Strategies and Know Samsung's Weaknesses and Pressure Points....................................................16

        B.     Powers and Cherensky Were Privy to Samsung's Most Sensitive Financial and Business Information ..................................................18

II.     POWERS' AND CHERENSKY'S PRIOR REPRESENTATIONS OF SAMSUNG ARE SUBSTANTIALLY RELATED TO THE CURRENT LAWSUIT..............................................................................................20

        A.     Samsung Had An Attorney-Client Relationship With Powers and Cherensky ..........................................................................................21

B.     There is a Substantial Relationship Between Powers and Cherensky's Former and Present Representations....................................................................22

III.   ALL TENSEGRITY ATTORNEYS THAT WORKED WITH POWERS AND CHERENSKY TO DEVELOP THIS CASE SHOULD BE DISQUALIFIED.................24

IV.   BOTH THE ETHICAL RULES AND SOCIAL INTERESTS FAVOR DISQUALIFICATION .........................................................................................................24

CONCLUSION.......................................................................................................................25

## <u>TABLE OF AUTHORITIES</u>

<u>Page</u>

### <u>Cases</u>

*In re Am. Airlines, Inc.*,
972 F.2d 605 (5th Cir. 1992) ........................................................................ *passim*

*Brennan's, Inc. v. Brennan's Restaurants, Inc.*,
590 F.2d 168 (5th Cir. 1979) ........................................................................17

*City of El Paso v. Salas-Porras Soule*,
6 F. Supp. 2d 616 (W.D. Tex. 1998)................................................................18

*Cty. of Los Angeles v. Superior Court*,
222 Cal. App. 3d 647 (2d Dist. 1990).............................................................17

*Dean Witter Reynolds, Inc. v. Clements, O'Neill, Pierce & Nickens, L.L.P.*,
Case No. H-99-1882, 2000 WL 36098499 (S.D. Tex. Sept. 8, 2000) ..............15, 16

*In re Dresser Indus., Inc.*,
972 F.2d 540 (5th Cir. 1992) .......................................................................24, 25

*Duncan v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
646 F.2d 1020 (5th Cir. 1981) .......................................................................25

*In re EPIC Holdings, Inc.*,
985 S.W.2d 41 (Tex. 1998)............................................................................23

*Gibbs v. Paluk*,
742 F.2d 181 (5th Cir. 1984) .........................................................................25

*In re Hoar Const., L.L.C.*,
256 S.W.3d 790 (Tex. App. - Houston [14th Dist.] 2008, no pet.)........................15

*Intellectual Ventures I LLC v. Checkpoint Software Tech. Ltd.*,
Case No. 10-1067, 2011 WL 2692968 (D. Del. June 22, 2011)........................17, 18

*Knight v. Ferguson*,
149 Cal. App. 4th 1207, 57 Cal. Rptr. 3d 823 (2d Dist. 2007).............................16

*Texaco, Inc. v. Garcia*,
891 S.W.2d 255 (Tex. 1995).........................................................................21, 24

*Ullrich v. Hearst Corp.*,
809 F. Supp. 229 (S.D.N.Y. 1992)...................................................................18

*Wasserman v. Black*,
910 S.W.2d 564 (Tex. App. - Waco 1995, no pet.) ............................................16

*In re Yamaha Corp.*,
62 F.3d 1431 (Fed. Cir. June 30, 1995) ...........................................................16

## Rules and Regulations

Am. Bar Ass'n Model Rules Prof'l Conduct R. 1.9 ..................................................................14

N.D. Tex. Civ. L.R. 83.8(e) ..........................................................................................13

Tex. Disciplinary Rules Prof'l Conduct R. 1.05 ..............................................................14, 15, 20

Tex. Disciplinary Rules Prof'l Conduct R. 1.09 .................................................................. *passim*

**Introduction**

Samsung respectfully moves to disqualify Matthew Powers, Steven Cherensky, and their law firm, Tensegrity Law Group, from representing Micrografx, LLC in this patent litigation lawsuit.  For a over a <u>decade</u> at their prior firm, Weil, Gotshal & Manges LLP, Powers and Cherensky represented Samsung in numerous patent litigations like this one.  Weil billed Samsung more than ████████ for work on patent matters during this period, ████████ ████████ from matters handled by Powers and/or Cherensky.  After they left Weil and started Tensegrity in 2011, Powers and Cherensky continued their relationship with Samsung, doing patent work for Samsung as recently as ████████.  To this day, Powers and Cherensky advertise their work for Samsung on the Tensegrity Law Group's website.

Texas Disciplinary Rule of Professional Conduct 1.09 precludes Powers and Cherensky from being adverse to their former client in this case for two separate and independent reasons.

*First*, Rule 1.09 requires disqualification because Powers and Cherensky received extensive amounts of Samsung confidential information that cannot be segregated in their minds, such that there is a reasonable probability that Samsung's confidential information will be used here to Samsung's disadvantage.  By virtue of their roles as Samsung's trusted patent counsel for years, Powers and Cherensky had access to and developed relationships with key Samsung IP team members and executives.  They also received extensive amounts of Samsung's highly sensitive confidential information such as Samsung's patent litigation settlement and licensing strategies, Samsung's perceived weaknesses and pressure points in patent cases, and of course confidential technical and financial information and strategies.  Samsung's legal team and executives regarded Powers, in particular, as a teacher—as a leading U.S. patent litigator, Samsung looked to him to learn about the U.S. legal system and patent laws.  They treated Powers and Cherensky as part of the Samsung internal IP team.  Under these circumstances,

1

Powers and Cherensky cannot help but utilize Samsung's former confidences to Samsung's disadvantage.  Disqualification is required as a matter of law.

**Second**, Rule 1.09 requires disqualification because, in 2011, Powers and Cherensky represented Samsung in connection with at least one substantially related case against *Vertical Computer Systems*.   In that case, Vertical Computer Systems brought accusations of patent infringement against Samsung's Galaxy smartphones and tablets—the same brand of products accused of infringement here.   Also like this case, *Vertical Computer Systems* involved patent infringement claims related to graphical components and libraries.   Powers and Cherensky filed and signed a Declaratory Judgment Complaint as lead counsel, submitted the Answer to the original complaint as lead counsel. ███████████████████████████████████ ██████████████████████████████████  Where, as here, counsel has represented a former client in a substantially related case, an irrebuttable presumption arises that counsel gained access to confidential information that could be used to the disadvantage of the client in the present case—and there is no need to show that confidences were shared.

The Texas ethics rules exist to protect the attorney-client privilege and to aid in the unfettered exchange of information between attorney and client.  *In re Am. Airlines, Inc.*, 972 F.2d 605, 619 (5th Cir. 1992).  A lawyer's obligation to preserve client confidences derives from his "primary duty of loyalty."  *Id.*  By filing this lawsuit on behalf of Micrografx, LLC against Samsung, Powers and Cherensky have violated their duty of loyalty to their long-time client Samsung.  Now, Samsung stands in a compromised position, forced to defend itself against trusted legal counsel with whom it had fostered a lengthy attorney-client relationship and shared company secrets that no adverse attorney would or should ever know.

2

Accordingly, Samsung respectfully requests the Court to disqualify Powers, Cherensky and their firm, the Tensegrity Law Group, from representing Micrografx, LLC in this case.

**Factual Background**

## I.   THE PARTIES

Micrografx, LLC did not exist prior to June 2013.[1]  It was created in this District three months before the filing of this lawsuit, likely for the sole purpose of bringing suit in this District. (Declaration of Joseph Milowic III ("Milowic Decl.") at Ex. C, Appendix ("App.") at 77).  Indeed, the patents-in-suit were assigned to the newly formed entity just one month before the filing of this lawsuit.  (Milowic Decl. at Exs. D, E, F, App. at 83, 90, 97).

Samsung is a well-known consumer electronics and technology company.  Samsung Electronics Co. was founded in 1969 in South Korea and has grown into one of the largest manufacturers of wireless communication devices.   Samsung Electronics America was established in 1977 in Ridgefield Park, New Jersey, to market, service, and develop consumer electronics and appliance products for the United States.   Samsung Telecommunications America was established in 1992 in Richardson, Texas, to research, develop, and market a variety of personal and business communications products throughout the United States, including smartphones and tablets under the Galaxy brand.  Most of Samsung's IP Legal Team and key executives are based in South Korea, where, among other duties, they are responsible for overseeing Samsung's United States patent litigations.   Unlike the newly formed entity Micrografx, LLC, before this lawsuit, Samsung had had an attorney-client relationship with both Powers and Cherensky for many years.

---

[1]   Micrografx, LLC is different than the software graphics company Micrografx, Inc., which the Corel Corporation acquired more than a decade ago.  (Milowic Decl. at Exs. A, B, App. at 5,11).

## II.   THE INSTANT CASE

On behalf of Micrografx, LLC, Powers and Cherensky filed this patent infringement action on September 9, 2013 against Samsung Electronics Co., Ltd., Samsung America, Inc. and Samsung Telecommunications America, LLC.  Micrografx alleges infringement of three patents: U.S. Patent Nos. 5,959,633, 6,057,854, and 6,552,732.  The '633 patent is directed to graphical libraries for shapes and graphical operations that can be used in client software programs.  The '854 and '732 patents are directed to specific kinds of graphical operations known as vector graphics.  Micrografx contends that Samsung's Galaxy smartphones and tablets infringe the asserted patents when their software applications, such as the Chrome (Internet) Browser and Google Maps, access external shapes stored outside the application and delegate the production of a graphical image of the external shape ('633 patent), and when they provide interactive vector graphics over a network ('854 and '732 patents).  (Dkt. No. 1).

## III.   POWERS', CHERENSKY'S AND TENSEGRITY'S RELATIONSHIP WITH SAMSUNG

### A.   Powers And Cherensky Received Samsung's Confidential Information In The Course Of Their Decade Long Relationship With Samsung And Its Most Senior IP Team Members And Executives

At their prior law firm, Weil, Gotshal & Manges LLP (the Weil firm), Powers and Cherensky represented each of the Samsung companies that are defendants in this case.  This relationship started in ██████████████████████████████████████

██████████████████████████████████████████████████████████

(Declaration of Young Jo Lim ("Lim Decl.") at Ex. A, App. at 269).  This initial engagement agreement ███████████████████████████████████████████████

███████████████████████████████ *Id.* ██████████████████

██ Weil continues to represent Samsung to this day.  (Lim Decl. at ¶ 7, App. at 264).

4

Before Powers and Cherensky left Weil in late 2011, Weil had represented Samsung in at least thirteen patent matters.  Either Powers or Cherensky, or both, represented Samsung in each of the following matters (Lim Decl. at ¶ 5, App. at 263-64):

1. *Vertical Computer Systems, Inc. v. Samsung Electronics Co. Ltd. et al.* (multiple matters), Case No. 2:10-CV-00490 (E.D. Tex.); Case No. 11-cv-00298-DF (E.D. Tex.); Case No. 11-cv-00189-RS (N.D. Cal.) (2010-2011) (both Powers and Cherensky involved)

2. *EON Corp. IP Holdings, LLC v. T-Mobile USA, Inc. et al.*, Case. No. 6:10-cv-00379-LED-JDL (E.D. Tex. 2010) (Cherensky involved)

3. Amicus Brief on Behalf of Samsung, *Ariad Pharm., Inc. v. Eli Lilly & Co.*, Case No. 2008-1248, 598 F.3d 1336 (Fed. Cir. 2010) (Powers and Cherensky involved)

4. Eastman Kodak, *Re: Certain Mobile Telephones and Wireless Communications Devices Featuring Digital Cameras,* International Trade Commission, Investigation No. 337-TA-663 (2009) (Powers and Cherensky involved)

5. Eastman Kodak, *Re: In the matter of Certain Digital Cameras*, International Trade Commission, Investigation No. 337-TA-671 (2009) (Powers and Cherensky involved)

6. *Eastman Kodak Company v. Samsung Electronics Company, Ltd. et al,* Case No. 6:08-cv-06513 (W.D.N.Y. 2008)  (Powers and Cherensky involved)

7. *Rambus Inc., v. Samsung Electronics Co., Ltd. et al.* (multiple matters), Case No. 05-cv-02298-RMW (N.D. Cal. #1); Case No, 05-cv-00406-REP (E.D. Va.), Case No. 06-cv-00244 (N.D. Cal #2), Case No. 05-cv-00334-RMW (N.D. Cal #3) (2005-2009) (Powers and Cherensky involved)

8. *Semiconductor Energy Laboratory Co., Ltd. v. Samsung Electronics Co., Ltd. et al.,* Case No. 3:09-cv-00001-BBC (W.D. Wisc 2009) (Powers involved)

9. InterDigital, *Re: Certain 3G WCDMA Handsets*, International Trade Commission, Investigation No. 337-TA-601 (2007-2008) (Powers and Cherensky involved)

11. *Mosaid Technologies v. Samsung Electronics Co., Ltd.,* Case No. 2:01-cv-04340-WJM-RJH (D. NJ 2004-2005) (Cherensky involved)

12. *Samsung Electronics Co., Ltd. v. Tessera Technologies, Inc. et al.*, Case No. 02-cv-05837-CW (N.D. Cal. 2002-2005) (Powers and Cherensky involved)

13. *Samsung Electronics Co., Ltd et al. v. Electronics for Imaging, Inc. et al.*, Case No. 02-cv-03141-MJJ (N.D. Cal. 2002) (Powers involved )

Over the course of a decade, Samsung paid more than ▮▮▮▮▮▮ to Weil, including more than ▮▮▮▮▮▮ for the matters handled directly by Powers and Cherensky.  (Lim Decl. at ¶ 8, App. at 264).  Of that total, ▮▮▮▮▮▮ was for Cherensky's work (more than ▮▮ billable hours)

5

and ██████ was for Powers' work (more than ███ billable hours).  (*Id.*).  Cherensky's

hours alone are equivalent to an attorney working exclusively on Samsung cases for ████████

████.  As lead counsel, Powers and Cherensky were Samsung's trusted and primary strategic

advisors across a variety of issues and matters and including case strategy, licensing, and

settlement.  (*Id.* at ¶¶ 9, 12, 14, 15, 18, App. at 264-66).

Over the course of this decade of representation at Weil, Powers and Cherensky

developed a deep relationship with Samsung in which, as would be expected in such an attorney-

client relationship, confidences were shared freely.  (*Id.* at ¶¶ 9, 15, App. at 264-65).  Powers

travelled to London, Korea, and Japan in a single year to meet with Samsung and to discuss

confidential Samsung matters.  (*Id.* at ¶ 10, App. at 264).  Cherensky made at least eleven visits

to Korea to meet with Samsung.  (*Id.* at ¶ 11, App. at 264).  These visits took place as early as

August 2003 and as recently as January 2011.  (*Id.*, App. at 264-265).  During their many visits,

Powers and Cherensky met with senior members of Samsung's legal team and conferred with

Samsung executives and engineers.  (*Id.*, App. at 265).  Given their roles as trusted legal counsel,

Samsung openly shared its highly sensitive information related to Samsung's patent litigation,

licensing, and settlement strategies.  (*Id.* at ¶¶ 12, 15, App. at 265).

Pursuant to their numerous legal representations, Powers and Cherensky also frequently

participated on conference calls and emails with the most senior Samsung IP counsel and

executives at Samsung, where Samsung's sensitive litigation, licensing and settlement strategies

were discussed and, at times, developed based on advice from Powers and Cherensky. (*Id.* at ¶

12, App. at 265).  Through these discussions, Powers and Cherensky learned of Samsung's views

as to pressure points and weaknesses in patent litigation, licensing, and settlement that confront

Samsung.  (*Id.* at ¶ 13, App. at 265).

As legal counsel, Powers and Cherensky regularly asked for, and were provided with, Samsung's confidential business information.  (*Id.* at ¶ 14, App. at 265).  They gained extensive knowledge of the operations of Samsung's in-house IP legal group, including management procedures, corporate-wide data retention and storage polices, how IP issues are escalated and responded to internally, and how Samsung evaluates, values and approaches settlements.  (*Id.*).

Powers and Cherensky also have intimate knowledge of Samsung's sensitive financial information.  They were privy to confidential and trade secret information regarding Samsung's financial status and overall profitability, as well as Samsung's patent litigation budgeting and how it values patent cases.  (*Id.* at ¶ 16, App. at 265-66).

Samsung respected Powers as a top patent litigator and, more importantly, considered him as a teacher, trusted advisor, and friend.  (*Id.* at ¶¶ 15, 17, App. at 265-66).  They viewed him as equivalent to a high-level in-house counsel, consulting on a wide range of Samsung's patent, licensing, litigation, and business strategies.  (*Id.* at ¶ 18, App. at 266).  As a non-U.S. headquartered company, Samsung relied heavily on Powers to teach their IP team and executives about the U.S. patent laws and legal system, and not just to serve as outside counsel for a specific matter.  (*Id.* at ¶ 19, App. at 266).  Powers' and Cherensky's knowledge of highly sensitive Samsung information, and Samsung's internal pressure points and weaknesses, has caused Samsung to have grave concerns concerning their representation of Micrografx in this case.  (*Id.* at ¶ 24, App. at 267).  Samsung feels that its trust has been betrayed.  (*Id.*).

**B.    Powers And Cherensky Have Confidential Knowledge About The Specific Technology And Products At Issue In This Case**

Micrografx asserts patent infringement claims against Samsung for patents related to graphics components, vector graphics, and associated libraries allegedly used in Samsung's Galaxy smartphones and tablets.  (Milowic Decl. at Exs. G, H, I, App. at 99-144).  The

Complaint broadly identifies Samsung's "mobile phones, tablets, notebooks, mobile applications, and web browsers" as infringing products, specifically accusing "at least" the following Samsung products models: Galaxy SIII, Galaxy S4, Galaxy Note II, Galaxy Tab 2, Galaxy Tab 3, Galaxy Note 10.1, Galaxy Note 8.0, and Chromebook. (Dkt. No. 1 ¶¶ 24, 26, 28).

Powers and Cherensky gained familiarity with Samsung's smartphone and tablet products, the Android and Samsung software running on those products, and the portions of software at issue in this case through their prior representations of Samsung. In the year prior to leaving Weil for Tensegrity, Powers and Cherensky oversaw, filed, and signed a Declaratory Judgment Complaint on behalf of Samsung in a patent infringement case involving substantially related technology, and involving the same types of products accused here—Samsung's Galaxy smartphones and tablets. (Milowic Decl. at Ex. J, App. at 145-80). In that case, *Samsung Electronics Co., LTD v. Vertical Computer Systems, INC.*, Case No. 3:11-cv-00189 (N.D. Cal. 2011), Powers and Cherensky were retained by Samsung as lead counsel, and Cherensky signed the Declaratory Judgment Complaint. (Milowic Decl. at Ex. J, App. at 157 ):

WEIL, GOTSHAL & MANGES LLP

By: *Steven S. Cherensky*

MATTHEW D. POWERS (Bar No. 104795)
matthew.powers@weil.com
STEVEN S. CHERENSKY (Bar No.168275)
steven.cherensky@weil.com
WEIL, GOTSHAL & MANGES LLP
Silicon Valley Office
201 Redwood Shores Parkway
Redwood Shores, CA 94065
Telephone: (650) 802-3000
Facsimile: (650) 802-3100

Vertical Computer Systems also filed a complaint against Samsung based on the same patents. (Milowic Decl. at Ex. K, App. at 181-88).[2] Samsung's Answer again identifies Powers and Cherensky as counsel for Samsung.[3] (Milowic Decl. at Ex. L, App. at 211).

---

[2] *Vertical Computer Systems, Inc. v. Interwoven, Inc. et al.*, Case No. 2:10-CV-00490 (E.D. Tex. 2010).

[3] Cherensky filed his notice of appearance in the case on December 20, 2010. (Milowic Decl. at Ex. M, App. at 213-15).

During the time leading up to the filing of the Declaratory Judgment Complaint, Powers and Cherensky were involved in the case strategy and discussions. ███████████

███████████████████████████████████████████████████

███████████████████████████ (Lim Decl. at Ex. B, App. at 276). ██████████

███████████████████████████████████████████████████

███████████████████████████ (Lim Decl. at Ex. C, App. at 286).

Cherensky continued to communicate with Samsung's in-house patent counsel on the *Vertical Computer Systems* cases through May 2011. (Lim Decl. at ¶ 20, App. at 266). ██████████

███████████████████████████████   ███████████████████████

███████████████████████████████████████████████████

███████████████████████████████

The *Vertical Computer Systems* cases are substantially related to the instant action. In *Vertical Computer Systems*, the plaintiff alleged patent infringement of Samsung's Galaxy smartphones and tablets—the same family of accused products at issue here in the Micrografx case. (Milowic Decl. at Ex. K ¶ 15, App. at 185; *Id.* at Ex. O ¶ 12, App. at 222 ).[4] Both the Micrografx and *Vertical Computer Systems* complaints specifically call out Samsung mobile phones as allegedly infringing products. (*See, e.g.,* Micrografx, Dkt. No. 1 ¶¶ 24, 26, 28

---

███████████████████████ (Lim Decl. at Ex. B, App. at 278). Cherensky filed his notice of withdrawal on October 13, 2011 after he was an attorney at Tensegrity. (Milowic Decl. at Ex. N, App. at 216-18).

[4]   The Plaintiffs in the *Vertical Computer* case asserted two patents related to arbitrary object framework programming. (Milowic Decl. at Exs. P, Q, App. at 227-251). The initial Complaint broadly alleged Samsung's "cellular telephones" as infringing products while specifically accusing "at least" the following Samsung product models: Galaxy Tab Tablet Computer, Galaxy Captivate Android Phone, Galaxy Fascinate Android Phone, Galaxy Epic Android Phone, Samsung Galaxy Mesmerize, i500 Touch Screen Cell Phone. (Milowic Decl. at Ex. K ¶ 15, App. at 185). Vertical Computer filed its First Amended Complaint in early 2013, which included a longer list of allegedly infringing Samsung Galaxy phone and tablet products. (Milowic Decl. at Ex. O ¶ 12, App. at 222-24).

("Samsung has infringed and continues to infringe one or more claims of the [] patent . . . by making, using, offering for sale, and selling in the United States and by importing into the United States *mobile phones*…") (emphasis added); and Milowic Decl. at Ex. K ¶ 15, Ex. O ¶ 12, App. at 185, 222 ("Defendant[] Samsung manufacture[s], [has] made, use[s], import[s], sell[s] and/or offer[s] for sale *cellular telephones* covered by at least one claim . . .") (emphasis added)). Both the Vertical Computer Systems and Micrografx complaints identify specific Galaxy smartphones and tablets as infringing while purporting to not limit their allegations to the specifically identified models. (*See, e.g.,* Micrografx, Dkt. No. 1 ¶¶ 24, 26, 28 ("[f]or example, *at least* the following systems directly infringe the [] patent") (emphasis added), Milowic Decl. at Ex. K ¶ 15, Ex. O ¶ 12, App. at 185, 222 ("[t]he infringement that has occurred is at least one of the following claims through commercialization of *at least* the following model phones") (emphasis added)). The Micrografx case will involve discovery into Samsung's Galaxy phones, all of which run Google's Android operating system. ██████████████████████████

████████████████████████████████████████████████████████████

████████████████████████ (Lim Decl. at Ex. F, App. at 306).

The patented technology at issue in the *Vertical Computer Systems* cases is also substantially related to the patented technology at issue here. Both cases involve patents directed to graphical objects, scalable vector graphics and libraries of graphical objects/shapes. (Declaration of Dr. Andries van Dam ("van Dam Decl.") at ¶ 13, App. at 340-41). For example, U.S. Patent No. 5,959,633 ("the '633 patent"), one of the patents asserted in this litigation by Micrografx, is directed to computer programs for generating graphical images and for providing shape libraries for storing shapes and graphical image generating programs:

> "The invention includes a method and system for *generating graphical images*. According to one embodiment of the invention, a *method for producing*

> *graphical images* includes executing a computer program and providing a *shape library* external to the computer program. The shape library defines a shape having associated capabilities." (Milowic Decl. at Ex. G, App. at 106 ('633 patent at Col. 1:40-46)) (emphasis added).

The patents at issue in *Vertical Computer Systems*, U.S. Patent Nos. 6,826,744 ("the '744 patent") and 7,716,629 ("the '629 patent") are also directed to computer programs (software applications) for generating graphical components and libraries for storing those graphical image generating programs:

> "The present invention provides a system and method for using a hierarchical, arbitrary object framework for *generating software applications*. The method separates content, *form*, and function of the software application so that each can be accessed or modified independently. The method of this invention includes creating arbitrary objects, managing the arbitrary objects in an *object library*, and deploying the arbitrary objects in a design framework for use in computer applications." (Milowic Decl. at Ex. P, App. at 232 ('744 patent at Col. 3:14-23), and Milowic Decl. at Ex. Q, App. at 246 ('629 patent at Col. 3:21-29)) (emphasis added).

The '744 patent states: "*[f]orm* includes *graphic designs*, user interfaces, and *graphical representations* created by a designer or a group of designers." (Milowic Decl. at Ex. P, App. at 231 ('744 patent at Col. 1:14-16)) (emphasis added).

As both cases involve the same types of technology, both cases will involve discovery into Samsung's confidential technical documents pertaining to Samsung's Galaxy smartphones and tablets, their underlying operating systems, and associated software. (van Dam Decl. at ¶¶ 14, 15, App. at 341). Plaintiffs will likely seek to depose the same Samsung engineers concerning their allegations of infringement. (*Id.* at ¶ 15, App. at 341). Technical documents, and prior art, at issue in each case are also likely to be substantially related. (*Id.*). ▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (Lim Decl.

at Ex. E, App. at 296, 300). Micrografx will almost certainly seek the same technical documentation concerning the accused Samsung Galaxy smartphones and tablets here. (van Dam Decl. at ¶¶ 14, 15, App. at 341).

To further explain how the technology at issue in the *Vertical Computer* cases and the technology at issue in this case are substantially related, Samsung provides herewith a detailed declaration of a leading computer graphics expert, Dr. Andries van Dam. (Van Dam Decl., App. at 337-341).

### C. Powers And Cherensky Formed Tensegrity Law Group To Handle Plaintiffs' Cases Like This One On Contingency—And Never Reached Out To Samsung For A Conflict Waiver

In 2011, Powers and Cherensky left Weil to start their new law firm, Tensegrity. According to one legal press report, which Tensegrity later published on its website, Powers' new firm planned to "focus on handling straightforward plaintiffs work on a contingency basis." (Milowic Decl. at Ex. R, App. at 253).

Yet, even after Powers and Cherensky left Weil, they continued to do work for Samsung. (Lim Decl. at Ex. D, App. at 288-290). Samsung approached Cherensky to do this work while still at the Weil firm, very close to when he left to form Tensegrity with Powers. (Lim Decl. at ¶ 21, App. at 266). Cherensky asked if he could take the matter with him to Tensegrity, submitted a pitch for the work, and Samsung agreed to have Tensegrity do the work. (*Id.*). ███████████ ████████████████████████████████████████████████████████████████████ (Lim Decl. at ¶ 21, Ex. D, App. at 288-290). To this day, neither Powers nor Cherensky has ever sent any formal termination of their attorney-client relationship with Samsung, or indicated to Samsung that any attorney-client relationship had ceased. (Lim Decl. at ¶ 22, App. at 266).

The Tensegrity lawyers continue to market their work for Samsung. For example, Cherensky highlights his experience representing Samsung as a marketing tool on his Tensegrity

profile page (Milowic Decl. at Ex. S, App. at 259). Under the section of the firm's website dedicated to positive press, an article on Powers emphasizes his close work with Samsung:

> "Bryan Richardson, senior patent counsel at Samsung Electronics, has worked closely with Powers. 'I get the opportunity to work with and see some great lawyers. In my opinion, Matt Powers is the best trial attorney I have seen to date.'" (*Id.* at Ex. T, App. at 258).

A third Tensegrity partner, Paul Ehrlich, who also represented Samsung while at Weil, also continues to publicize his trial experience on behalf of Samsung on the Tensegrity website.[5] (*Id.* at Ex. U, App. at 261).

Before filing this case, no one at Tensegrity ever reached out to Samsung to ask for a conflict waiver. Samsung certainly never provided one. (Lim Decl. at ¶ 23, App. at 267).

### D. Tensegrity's Attorneys Have Been Tainted By Working With Powers And Cherensky To Develop This Case

Tensegrity clearly has not instituted any ethical screening measures. Powers and Cherensky appear in the signature block of the Complaint. (Dkt. No. 1).

After receiving the complaint, engaging counsel and marshalling the facts concerning Powers and Cherensky's extensive work for Samsung, on December 17, 2013, Samsung wrote to Powers and Cherensky requesting that they and their law firm, Tensegrity Law Group, withdraw as counsel from this case, explained why, and in compliance with this Court's Local Rules, requested a meet-and-confer. Tensegrity stated that it was unavailable to meet and confer until Monday, December 23, 2013. The parties met and conferred on that date, but could not resolve this dispute.

---

[5] Ehrlich billed over ███ hours to Samsung during his time at Weil. (Lim Decl at ¶ 8).

## Legal Standard

The Fifth Circuit requires that a court is "*obliged* to take measures against unethical conduct occurring in connection with any proceeding before it." *In re Am. Airlines, Inc.*, 972 F.2d 605, 611 (5th Cir. 1992) (internal citations omitted) (emphasis in original). The Northern District of Texas defines unethical behavior as any conduct that violates the Texas Disciplinary Rules of Professional Conduct. N.D. Tex. Civ. L.R. 83.8(e). As the Texas Rules "do not differ materially" from the corresponding American Bar Association Model Rules of Professional Conduct (the "ABA Rules"), federal courts in the Fifth Circuit use both Texas and national standards to adjudicate motions for disqualification. *Am. Airlines,* 972 F.2d at 610. Identical to ABA Rule 1.9 "in all important respects," *id.* at 615 n.2, Texas Disciplinary Rule of Professional Conduct 1.09 provides in relevant part:

> (a) Without prior consent, a lawyer who personally has formerly represented a client in a matter shall not thereafter represent another person in a matter adverse to the former client:
>
> > * * *
>
> > (2) if the representation in reasonable probability will involve a violation of Rule 1.05; or
>
> > (3) if it is the same or a substantially related matter.
>
> (b) Except to the extent authorized by Rule 1.10, when lawyers are or have become members of or associated with a firm, none of them shall knowingly represent a client if any one of them practicing alone would be prohibited from doing so by paragraph (a).

As detailed below, both 1.09(a)(2) and (a)(3) provide independent grounds for disqualification. Under 1.09(a)(2), Powers and Cherensky should be disqualified, because given the extent and type of confidential information that they possess, they cannot segregate the information in their minds. As a result there is a reasonable probability that they will violate Rule 1.05, which forbids the "use [of] confidential information of a former client to the disadvantage

14

of the former client."  Tex. Disciplinary Rules Prof'l Conduct R. 1.05(b)(3).  Separately, Powers and Cherensky should be disqualified because they have previously represented Samsung in the substantially related *Vertical Computer Systems* matters.

**<u>Argument</u>**

**I.   <u>IT IS REASONABLY PROBABLE THAT TENSEGRITY WILL USE SAMSUNG'S CONFIDENTIAL INFORMATION TO SAMSUNG'S DISADVANTAGE IN THIS CASE</u>**

Rule 1.09 "forbids a lawyer to appear against a former client if the current representation in ***reasonable probability*** will involve the use of confidential information."  *Am. Airlines,* 972 F.2d at 615 (emphasis added).  Confidential information includes both attorney-client privileged information and any unprivileged information relating to a client "acquired by the lawyer during the course of or by reason of the representation of the client."  Tex. Disciplinary Rules Prof'l Conduct R. 1.05(a).  Disqualification is "necessary" where confidential information ***could*** be used to the former client's disadvantage.  Tex. Disciplinary Rules Prof'l Conduct R. 1.05(b)(3); *see, e.g., Dean Witter Reynolds, Inc. v. Clements, O'Neill, Pierce & Nickens, L.L.P.*, CIV.A. H-99-1882, 2000 WL 36098499 at *10-11 (S.D. Tex. Sept. 8, 2000) (attorney who had previously defended bank against numerous securities law claims was disqualified from representing a plaintiff investor in a securities claim against bank).  Under Rule 1.09, "the propriety of disqualification rests not on whether confidential information ***has been*** divulged or used to the detriment of the former client. Disqualification is appropriate when there is a ***reasonable probability*** of such information's being used or divulged."  *In re Hoar Const., L.L.C.*, 256 S.W.3d 790, 804 (Tex. App. – Houston [14[th] Dist.] 2008, no pet.) (emphasis added).

When disclosure of confidential information is reasonably probable, it is unnecessary for the former client "to delineate specifically the common subject matter and issues" which could be compromised, "because requiring such detail about confidential disclosures would require

15

[the former client] to reveal the very information it seeks to protect." *Dean Witter,* 2000 WL 36098499 at *10 (citing *Islander East Rental Program v. Ferguson,* 917 F. Supp. 504, 511 (S.D. Tex. 1996)). Instead, the former client must only identify the tenor of disclosures made to opposing counsel previously, and "demonstrate that such disclosures [are] relevant to and jeopardized by" opposing counsel's current representation. *Id.* "Clients should not be put in a position where they must fret over whether the confidential information they disclosed to their previous attorney will later be used against them." *Wasserman v. Black,* 910 S.W.2d 564, 568 (Tex. App. – Waco 1995, no pet.).

Here, Samsung is faced with not a mere probability that its confidential information will be used against them, but a ***virtual certainty*** that its most sensitive secrets concerning its approach to patent litigation strategy and its weaknesses in settlement negotiations will be used against them, as that knowledge cannot be segregated from the minds of counsel.

A.      **Powers And Cherensky Possess Samsung's Most Sensitive Patent Litigation, Licensing, And Settlement Strategies And Know Samsung's Weaknesses And Pressure Points**

Former counsel's discussions regarding "confidential strategies and tactics" with a client's management and in-house counsel are "the very confidences protected" by Texas Rules 1.09 and 1.05. *Dean Witter*, 2000 WL 36098499 at *10. Accordingly, courts applying these ethical principles have ordered disqualification where former counsel was privy to confidential information regarding the former client's licensing, settlement, and litigation strategies. *See e.g. In re Yamaha Corp.*, 62 F.3d 1431, *1 (Fed. Cir. June 30, 1995); *Knight v. Ferguson*, 149 Cal. App. 4th 1207, 1215, 57 Cal. Rptr. 3d 823, 828-29 (2d Dist. 2007) ("Where an attorney acquires knowledge about the former client's attitudes, practices, business customs, litigation philosophy, strengths, weaknesses or strategy, disqualification may be required for that reason alone.") As one district court noted, it is a "common sense inference" that a former counsel's knowledge of

16

its former client's "patent licensing practices, negotiation of patent licenses, strategies for potential patent litigation, and ways of mitigating the risk of patent litigation" would prove "relevant" and "harmful" to that former client in patent litigation against the former counsel. *Intellectual Ventures I LLC v. Checkpoint Software Tech. Ltd.,* CIV. 10-1067, 2011 WL 2692968 at *11 (D. Del. June 22, 2011) (granting motion to disqualify former counsel).

As detailed above, Powers and Cherensky have extensive knowledge of Samsung's patent litigation and settlement strategies, practices, business customs, philosophy, strengths, and weaknesses by virtue of their unique and extensive relationship as teachers to Samsung of the U.S. patent laws and legal system.  (Lim Decl. at ¶ 15, App. at 265).  Powers and Cherensky cannot be expected to be able to segregate the confidential information they learned from Samsung when representing Micrografx, particularly while they develop their case and settlement strategies.  *Cf. Cty. of Los Angeles v. Superior Court*, 222 Cal. App. 3d 647, 658 (2d Dist. 1990) ("Having become privy to an opposing attorney's work product, there is no way the offending attorney could separate that knowledge from his or her preparation of the case.")

There can be no real question that Powers' and Cherensky's intimate familiarity with Samsung's pressure points and business sensitivities will necessarily impact their case and settlement strategies for Micrografx.  Indeed, the likelihood that Powers and Cherensky have already engaged in case strategy with other members of the Tensegrity firm is deeply concerning to Samsung.  It puts Samsung in the position of having to question the extent to which it should share confidential information with its legal counsel in future cases.  *See, e.g., Am. Airlines,* 972 F.2d at 620 ("The trust a lawyer's duty of loyalty inspires in clients encourages them freely to confide in the lawyer and freely to rely on the advice provided by the lawyer."); *Brennan's, Inc. v. Brennan's Restaurants, Inc.*, 590 F.2d 168, 172 (5th Cir. 1979) ("The obligation of an attorney

not to misuse information acquired in the course of representation serves to vindicate the trust and reliance that clients place in their attorneys.").

### B.   Powers And Cherensky Were Privy To Samsung's Most Sensitive Financial And Business Information

Knowledge of confidential business information apart from discrete litigation matters also supports disqualification. *City of El Paso v. Salas-Porras Soule*, 6 F. Supp. 2d 616, 624-25 (W.D. Tex. 1998); *Ullrich v. Hearst Corp.*, 809 F. Supp. 229, 236 (S.D.N.Y. 1992) (lawyer's "consulting advice to management on wide-ranging questions in the [pertinent legal issue] area" is "inevitably pertinent" to adverse litigation on the same subject matter).  For example, counsel's knowledge of a former client's financial and tax information disqualifies counsel from later representing entities seeking discovery into former client's financial assets and dealings. *City of El Paso*, 6 F. Supp. 2d at 624-25.  Where external lawyers function as trusted counsel to a client over an extended period of time, the length and breadth of counsel's representation supports disqualification. *Intellectual Ventures,* 2011 WL 2692968 at *9-10.

Texas Rules 1.09 and 1.05 also recognize that opposing counsel can ***use*** confidential information to their former client's disadvantage without even disclosing specific pieces of information to their new clients.  Tex. Disciplinary Rules Prof'l Conduct Rs. 1.09(a)(2) and 1.05(b)(3) (lawyer may not be adverse to former client "if the representation in reasonable probability will involve" the "***use*** [of] confidential information of a client to the disadvantage of the client.") (emphasis added).  Courts have recognized that "[a]dverse use of confidential information is not limited to disclosure. It includes knowing what to ask for in discovery, which witnesses to seek to depose, what questions to ask them, what lines of attack to abandon and what lines to pursue, what settlements to accept and what offers to reject, and innumerable other

18

uses." *Ullrich*, 809 F. Supp. at 236 (quoted verbatim by *Intellectual Ventures,* 2011 WL 2692968 at *11).

Powers and Cherensky were privy to Samsung's confidential business information, including its business and financial information which may be sought by Micrografx here in support of its case.  Over many years, they met with Samsung's IP Legal Team and its top executives in Korea.  (Lim Decl. at ¶¶ 11-12, App. at 264-65).  Powers and Cherensky have worked closely with Samsung executives and engineers, who have confided in them and respected them as trusted advisors and teachers—not only as counsel who defended them in depositions and trials.  (*Id.* at ¶¶ 9, 11, 12, 13, 14, 17, 18, App. at 264-66).  In this action, Powers and Cherensky have now turned their aim toward these very same individuals.  Powers and Cherensky should not be permitted to depose and cross-examine the very individuals who confided in them, relied upon them as advisors, and trusted them.  Put differently, Powers and Cherensky should not be able to "use" their intimate knowledge of Samsung's employees and executives to potentially gain an advantage over those individuals in the deposition room and on the witness stand.

Powers and Cherensky further enjoyed access to Samsung's confidential technical documents, product specimens, and personnel relevant to Samsung's Galaxy smartphones and tablet devices, the very family of devices accused in this case.[6]  Such information constitutes confidential and trade secret Samsung information, which Powers and Cherensky could also use to Samsung's detriment, particularly in view of their prior representations of Samsung in cases

---

[6]   While the Complaint specifically references Samsung's most recent phone and tablet models, Micrografx's allegations purport not to be so limited. (Dkt. 1 ¶¶ 24, 26, 28 ("Samsung has infringed… by making, using, offering for sale, and selling in the United States and by importing into the United States mobile phones, tablets, notebooks, mobile applications, and web browsers that infringe one or more claims . . . ***at least*** the following systems directly infringe . . .") (emphasis added).

involving Samsung's smartphones (*e.g.*, *Vertical Computer Systems* and *Kodak*).   In sum, Samsung is faced with an adversary whose attorneys possess the very confidential information which Samsung shared with them in reliance on their ethical duties of confidentiality and loyalty. Under the circumstances, Samsung feels its only option is to move to disqualify Powers, Cherensky, and their firm.

## II.  POWERS' AND CHERENSKY'S PRIOR REPRESENTATIONS OF SAMSUNG ARE SUBSTANTIALLY RELATED TO THE CURRENT LAWSUIT

In addition to the reasonable probability that Tensegrity will use Samsung's confidential information to Samsung's disadvantage here, disqualification is further required because Powers and Cherensky have represented Samsung in a case substantially related to this one.   Texas Rule 1.09 forbids a lawyer, absent a waiver, to be adverse to a former client in a "substantially related matter" to a previous representation.   Tex. Disciplinary Rules Prof'l Conduct R. 1.09(a)(3). Once it is established that the prior matter is substantially related to the present case, "the court will irrebuttably presume that relevant confidential information was disclosed during the former period of representation." *Am. Airlines,* 972 F.2d at 614.   "[B]ecause the substantial relationship test is concerned with both a lawyer's duty of confidentiality *and* his duty of loyalty, a lawyer who has given advice in a substantially related matter must be disqualified, ***whether or not he has gained confidences."*** *Id.* at 619 (emphasis added).   Here, there is no question that Powers and Cherensky have gained relevant confidences, as detailed above.   But, even if they had not, the fact that they also filed a case (*Vertical Computer Systems*) on behalf of Samsung involving substantially related technology is a separate and independent ground compelling their disqualification here.

Under the substantial relationship test, "[a] party seeking to disqualify opposing counsel on the ground of a former representation must establish two elements: 1) an actual attorney-client

relationship [existed] between the moving party and the attorney he seeks to disqualify and 2) a substantial relationship between the subject matter of the former and present representations." *Am. Airlines,* 972 F.2d at 614.   A substantial relationship may be found if "the moving party delineates with specificity the subject matters, issues and causes of action common to prior and current representations[.]"   *Id.*   The subject matter does not "need to be relevant in the evidentiary sense to be substantially related. It need only be akin to the present action in a way reasonable persons would understand as important to the issues involved*."   Id.* at 618-19 (internal citations omitted).

The Texas Supreme Court has held that it is an abuse of discretion for a trial court **not** to disqualify attorneys who oppose a former client in matters "involv[ing] similar liability issues, similar scientific issues, and similar defenses and strategies" as were present when counsel previously represented that former client.   *Texaco, Inc. v. Garcia*, 891 S.W.2d 255, 257 (Tex. 1995).   Here, the *Vertical Computer Systems* cases are substantially related to this case in that they are patent litigation cases involving the same Galaxy family of accused smartphones and tablets, substantially related patented technologies, and the same defenses of at least non-infringement and invalidity will be at issue.

### A.   Samsung Had An Attorney-Client Relationship With Powers And Cherensky

Samsung has demonstrated that it had an attorney-client relationship with Powers and Cherensky, as evidenced by the multitude of patent litigation matters on which they represented Samsung.   Weil brought in more than ███████ from Samsung between 2001 and 2011, more than ███████ on the matters handled directly by Powers and Cherensky. (Lim Decl. at ¶ 8, App. at 264).   ███████ of that was the nearly ████ combined billable hours of work by Powers and Cherensky.   (*Id.*).

Moreover, Powers' and Cherensky's relationship and work for Samsung continued when Powers formed his new firm, Tensegrity. (Lim Decl. at ¶ 21, App. at 266). Neither Tensegrity, nor Powers or Cherensky, however, ever formally terminated their relationship with Samsung. (*Id.* at ¶ 22, App. at 266). Before filing the current *Micrografx* Complaint, they never reached out to Samsung to request a conflict waiver and Samsung has never signed such a waiver. (*Id.* at ¶ 23, App. at 267).

**B.     There Is A Substantial Relationship Between Powers' And Cherensky's Former And Present Representations**

In addition to the general subject matter of this case—patent law—being the same as all the matters worked on by Powers and Cherensky for Samsung over the years, this case involves the same accused product families and substantially related technology as the *Vertical Computers* cases in which Powers and Cherensky represented Samsung. As discussed above, *Vertical Computers* involves accusations of infringement by Samsung's Galaxy smartphones and tablets—the same family of products accused here. And the patented technology at issue in *Vertical Computers* is also substantially related to the patented technology at issue here. (van Dam Decl. at ¶ 13, App. at 340-41). Both cases involve patents directed to graphical objects, scalable vector graphics and libraries of graphical objects/shapes. (*Id.*).

For example, U.S. Patent No. 5,959,633 ("the '633 patent"), one of the patents asserted in this litigation, is directed to computer programs for generating graphical images and libraries for storing shapes and graphical image generating programs. (Milowic Decl. at Ex. G, App. at 106 ('633 Patent at Col. 1:40-46)). The patents at issue in *Vertical Computer Systems*, U.S. Patent Nos. 6,826,744 ("the '744 patent") and 7,716,629 ("the '629 patent") are also directed to computer programs (software applications) for generating graphical components and libraries for storing those graphical image generating programs. (Milowic Decl. at Exs. P, Q, App. at 232,

22

246).   Samsung provides a declaration herewith by a leading computer graphics expert, Dr.

Andries van Dam, to explain how the cases are substantially related.  (van Dam Decl. at ¶¶ 13,

14, 15, App. at 340-41).   Given that the same products are accused, both cases will involve the

same types of discovery requests into Samsung's technical documents related to its Galaxy

smartphones and tablets.   (*Id.*)   Both cases will also involve depositions and testimony from

engineers in the same departments within Samsung, if not the very same engineers, who have

worked on the software for Samsung's Galaxy smartphones and tablets. (*Id.*)

Both Powers and Cherensky entered appearances in the two *Vertical Computers* cases,

and Cherensky filed and signed the declaratory judgment complaint on behalf of Samsung in

which they asserted non-infringement of Samsung's Galaxy smartphones and tablets.  (Milowic

Decl. at Ex. J, App. at 157).   ███████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

████████████████████   (Lim Decl. at Exs. B, C, G, H, App. at 276, 318, 329).   ███████

████████████████████████████   (Lim Decl. at Ex. C, App. at

285).   Both Powers and Cherensky also were identified as counsel on Samsung's Answer in

Vertical Computers' offensive case against Samsung.  (Milowic Decl. at Ex. L, App. at 211).

The facts above show both an actual attorney-client relationship existed between

Samsung and Powers, Cherensky, and Tensegrity, and that there is a substantial relationship

between the subject matter of this case and the *Vertical Computers* cases in which Powers and

Cherensky defended Samsung.  For that reason, disqualification is necessary and appropriate.

## III.   ALL TENSEGRITY ATTORNEYS THAT WORKED WITH POWERS AND CHERENSKY TO DEVELOP THIS CASE SHOULD BE DISQUALIFIED

Texas Rule 1.09(b) provides that no attorney in a law firm "shall knowingly represent a client if any one of them practicing alone would be prohibited from doing so."  The Texas Supreme Court has established "an irrebuttable presumption that an attorney in a law firm has access to the confidences of the clients and former clients of other attorneys in the firm."  *In re EPIC Holdings, Inc.*, 985 S.W.2d 41, 49 (Tex. 1998) (internal citations omitted).  While some courts allow an entire firm to avoid disqualification if it has instituted effective ethical screening measures, Tensegrity has not even attempted to screen Powers and Cherensky from this action; rather, their names appear in the signature block of the Complaint. (Dkt. 1 at 9.).  Under Rule 1.09, Powers' and Cherensky's conflicts must be imputed to the entire firm, thus requiring Tensegrity's complete disqualification.  *See, e.g., Texaco,* 891 S.W.2d at 257 (disqualifying entire law firm due to one attorney's prior long-time representation of Texaco at a former firm).

## IV.   BOTH THE ETHICAL RULES AND SOCIAL INTERESTS FAVOR DISQUALIFICATION

As the final step of its analysis, the Fifth Circuit considers whether a conflict has (1) the appearance of impropriety in general, or (2) a possibility that a specific impropriety will occur, and (3) the likelihood of public suspicion from the impropriety outweighing any social interests which will be served by the lawyer's continued participation in the case.  *In re Dresser Indus., Inc.*, 972 F.2d 540, 544 (5th Cir. 1992).  Here, there is an appearance of impropriety from Powers and Cherensky adopting an adverse position to a former client over substantially related subject matter – namely, alleged patent infringement by Samsung's mobile phones and tablets.  Moreover, given the depth of Samsung confidential information to which Powers and Cherensky have been privy over the past decade, there is a strong possibility that a specific impropriety – namely, use of Samsung's confidential information to Samsung's detriment – will occur.  In

24

addition, there are minimal societal interests to be served by Tensegrity's continuing participation in the case. At this early stage in litigation, there is no reason "that other lawyers could not ably perform his offices for the plaintiffs." *Dresser*, 972 F.2d at 545.

Finally, disqualification should be granted "if [a lawyer's] sole reason for suing his own client is the lawyer's self-interest." *Id*. Such is the case here. Given what Powers has publicly stated about his plans for launching a plaintiff-side firm focused on patent litigation on a contingency basis, Powers and Cherensky have presumably taken this case in hopes of a financial benefit. There is no indication of "any societal or professional interest to be served" by their representation, beyond their self-interest. *Id*. While almost all lawyers practice for the purpose of receiving compensation, it is improper for Tensegrity to litigate against its long-time client Samsung when all it is seeking is money.

The Fifth Circuit has long recognized that where "the sanctity of information previously given in confidence is indeed in jeopardy", courts should "disqualify the attorney from opposing his former client." This is because "the integrity of the judicial system would be sullied if courts tolerated such abuses by those who profess and owe undivided loyalty to their clients." *Duncan v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 646 F.2d 1020, 1027 (5th Cir. 1981), *abrogated on other grounds by Gibbs v. Paluk*, 742 F.2d 181, 185 (5th Cir. 1984). Samsung's confidential information, freely provided to Powers and Cherensky over a decade-long relationship as its trusted legal counsel, is in jeopardy here. Disqualification of Powers, Cherensky, and the Tensegrity Law Group is respectfully requested.

<u>Conclusion</u>

For the foregoing reasons, the Court should grant Samsung's Motion to Disqualify Matthew Powers, Steven Cherensky, and Tensegrity Law Group LLP from serving as counsel for Micrografx, LLC in this case.

25

Dated:  December 23, 2013                    Respectfully submitted,


    */s/ Jon B. Hyland*

Jon B. Hyland
MUNSCH HARDT KOPF & HARR
500 N. Akard Street, Suite 3800
Dallas, TX 75201-6659
Phone: (214) 855-7544
Fax: (214) 978-5360
jhyland@munsch.com

Kevin P.B. Johnson  (*admission pending*)
QUINN EMANUEL URQUHART & SULLIVAN, LLP
555 Twin Dolphin Drive., 5th Floor
Redwood Shores, California 94065
Phone: (650) 801-5000
Fax: (650) 801-5100
kevinjohnson@quinnemanuel.com

David A. Perlson  (*admission pending*)
QUINN EMANUEL URQUHART & SULLIVAN, LLP
50 California Street, 22nd Floor
San Francisco, California  94111-4788
Telephone: (415) 875-6600
Facsimile: (415) 875-6700
davidperlson@quinnemanuel.com

Joseph Milowic III (*admission pending*)
QUINN EMANUEL URQUHART & SULLIVAN, LLP
51 Madison Ave., 22nd Floor
New York, New York 10010
Telephone: (212) 849-7000
Facsimile: (212) 849-7100
josephmilowic@quinnemanuel.com

*Attorneys for Defendants, Samsung Telecommunications America, LLC; Samsung Electronics America, Inc.; Samsung Electronics Co., Ltd.*


26