**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | |
|---|---|
| MICROGRAFX, LLC, | ) ) Civil Action No. 3:13-cv-03599 |
| Plaintiff, | ) ) **JURY TRIAL DEMANDED** |
| v. | ) ) |
| SAMSUNG TELECOMMUNICATIONS AMERICA, LLC, SAMSUNG ELECTRONICS AMERICA, INC., and SAMSUNG ELECTRONICS CO. LTD., | ) **REDACTED VERSION** ) ) ) |
| Defendants. | ) ) |

**PLAINTIFF MICROGRAFX, LLC'S RESPONSE IN OPPOSITION TO DEFENDANTS'
MOTION TO DISQUALIFY MATTHEW POWERS, STEVEN CHERENSKY, AND THE
TENSEGRITY LAW GROUP AS COUNSEL FOR MICROGRAFX AGAINST
<u>SAMSUNG IN THIS CASE</u>**

**TABLE OF CONTENTS**

I.    INTRODUCTION ........................................................................................... 1

II.   LEGAL PRINCIPLES ................................................................................... 3

III.  SAMSUNG HAS FAILED TO SHOW A SUBSTANTIAL RELATIONSHIP
      BETWEEN THE *MICROGRAFX* CASE AND A *VERTICAL* CASE
      ███████████████████████████████████ ........................................... 4

      A.    Tensegrity Attorneys Did Not Represent Samsung On Anything Substantially
            Related To *Micrografx* In The *Vertical* Case ......................................... 5

      B.    The *De Minimus* Connection Of Tensegrity Attorneys To The *Vertical* Case
            Does Not Meet The Legal Test Of Substantial Relatedness .................................... 7

            1.    The Limited Representation In The *Vertical* Case Is Not Factually Related To
                  This Case ........................................................................ 7

            2.    The Limited Legal Issues Presented By The Early Stages Of The *Vertical*
                  Case Are Not Related To The Issues In *Micrografx* ................................. 12

            3.    The Limited Nature And Extent Of The Prior Involvement Preclude
                  Substantial Relatedness .......................................................... 13

IV.   SAMSUNG HAS FAILED TO PROVE THE REQUIRED CONNECTION
      BETWEEN CONFIDENTIAL INFORMATION DISCLOSED IN PRIOR,
      UNRELATED CASES AND *MICROGRAFX* ................................................... 13

      A.    Samsung Has Not Met Its Burden To Show A Risk Of Disclosure Of Practices
            Or Procedures That Are The Subject Matter Of This Suit .................................... 17

            1.    Samsung Has Failed To Identify Any Confidential Information Beyond
                  Subjects Generic To Any Patent Litigation ....................................... 17

            2.    Texas Courts In Patent Litigations Have Rejected Samsung's Approach
                  Because It Is Dangerously Overbroad ............................................. 20

            3.    Samsung Relies On Materials That Are Not Cognizable Under The Threat-
                  Of-Disclosure Test .............................................................. 23

V.    THE PUBLIC POLICY CONSIDERATIONS IN THE ABA RULES FAVOR
      DENIAL OF SAMSUNG'S MOTION ............................................................. 24

VI.   CONCLUSION ............................................................................................ 25

# TABLE OF AUTHORITIES

**Cases**

*Bayou Pumps & Prods., Inc. v. Discflo Corp.*
    No. 06-0962, 2006 U.S. Dist. LEXIS 90067 (W.D. La. Dec. 13, 2006) ................................. 10

*Biax Corp. v. Fujitsu Computer Sys. Corp.*
    No. 2:06-CV-364, 2007 U.S. Dist. LEXIS 35770 (E.D. Tex. May 16, 2007).......................... 9

*City of El Paso v. Salas-Porras Soule*
    6 F. Supp. 2d 616 (W.D. Tex. 1998) ...................................................................................... 22

*Dean Witter Reynolds, Inc. v. Clements, O'Neill, Pierce & Nickens, L.L.P.*
    No. H-99-1882 2000 U.S. Dist. LEXIS 22852 (S.D. Tex. Sep. 8, 2000)................................ 16

*Duncan v. Merrill Lynch, Pierce, Fenner & Smith. Inc.*
    646 F.2d 1020 (5th Cir. 1981) ........................................................................................ passim

*E-Contact Techs., LLC v. Apple, Inc.*
    No. 1:11-CV-426 (E.D. Tex. Sept. 26, 2012).................................................................... 20, 21

*FDIC v. U.S. Fire Ins. Co.*
    50 F.3d 1304 (5th Cir. 1995) ................................................................................................... 3

*In re Am. Airlines, Inc.*
    972 F.2d 605 (5th Cir. 1992) .......................................................................................... passim

*In re Dennis Drake*
    195 S.W.3d 232 (Ct. App. Tex. 2006) .................................................................................... 19

*In re Dresser Indus., Inc.*
    972 F.2d 540 (5th Cir. 1992) .................................................................................................. 24

*Intellectual Ventures I LLC v. Checkpoint Software Techs. Ltd.*
    No. 10-1067-LPS, 2011 U.S. Dist. LEXIS 154921 (D. Del. June 22, 2011) .......................... 22

*M-I LLC v. Stelly*
    No. 4:09-cv-1552, 2010 U.S. Dist. LEXIS 52736 (S.D. Tex. May 26, 2010).................. 12, 13

*Power MOSFET Techs., L.L.C. v. Siemens AG*
    No. 2:99-CV-168, 2002 U.S. Dist. LEXIS 27557 (E.D. Tex. Sep. 30, 2002).................. 10, 24

*Secure Axcess, LLC v. Dell Inc.*
    No. 6:11-CV-338, 2012 U.S. Dist. LEXIS 61152 *7 (E.D. Tex. Feb. 23, 2012)........ 3, 7, 9, 20

*Soverain Software LLC v. CDW Corp.*
    No. 6:07-cv-511, 2010 U.S. Dist. LEXIS 26162 (E.D. Tex. Mar. 18, 2010) .......................... 12

*Texaco, Inc. v. Garcia*
    891 S.W.2d 255 (Tex. 1995) .................................................................................... 11

*Ullrich v. Hearst Corp.*
    809 F. Supp. 229 (S.D.N.Y. 1992) ................................................................. 21, 22

*Vertical Computer Sys., Inc. v. Samsung Elecs. Co.*
    No. 11-cv-00189-RS (N.D. Cal.) ............................................................................. 2

*Vertical Computer Sys., Inc. v. Samsung Elecs. Co.*
    No. 11-cv-00298-DF (E.D. Tex.) ............................................................................. 2

*Vertical Computer Sys., Inc. v. Samsung Elecs. Co.*
    No. 2:10-CV-00490 (E.D. Tex.) ............................................................................... 2

**Other Authorities**

ABA Model Rule 1.9 ............................................................................... 1, 4, 24, 25

## I.       INTRODUCTION

The Fifth Circuit and the American Bar Association have designed ethics rules for former-client representations that reflect reality.  Large companies hire many attorneys, attorneys represent many companies, and in specialized fields, including patent litigation, these companies and attorneys routinely find themselves on the opposite sides of later cases.  Every representation that covers the normal litigation life cycle from discovery to settlement or judgment necessarily familiarizes an attorney with a client's strategies, pressure points, employees, in-house counsel, and documents.  Yet "the courts have seen no need to fashion a rule that prevents an attorney from ever representing an interest adverse to that of a former client." *Duncan v. Merrill Lynch, Pierce, Fenner & Smith. Inc.,* 646 F.2d 1020, 1027-28 (5th Cir. 1981).  The general rule is the opposite:  "In the case of an organizational client, general knowledge of the client's policies and practices ordinarily will not preclude a subsequent representation."  ABA Model Rule 1.9 (Comment 3).[1]  Similarly, merely because an attorney "recurrently handled a type of problem for a former client," that attorney "is not precluded from later representing another client in a factually distinct problem of that type even [if] the subsequent representation involves a position adverse to the prior client." *Id.* (Comment 2).

The "drastic remedy" of disqualification is only appropriate in the narrow circumstance where the prior representation goes beyond the typical sharing of confidences for a case of that type and has a nexus to the new case—where the prior representation is "substantially related" to the present one, or the client can show specific confidences that are themselves the subject matter of the later suit. *Duncan,* 646 F.2d at 1027, 1032.

---

[1] *Available at* http://www.americanbar.org/groups/professional_responsibility/publications/model_rules_of_pro fessional_conduct/rule_1_9_duties_of_former_clients/comment_on_rule_1_9.html.

Samsung's motion falls short of these standards.  There was no "substantially related" representation by Tensegrity's attorneys.  The only prior case Samsung points to as being substantially related is *Vertical*,[2] a factually-distinct matter on which Matt Powers and Steve Cherensky ███████████.  Nor does Tensegrity possess old confidential information of Samsung that is "specific" to the instant case involving Micrografx.  The vague, high-level list of allegedly-confidential disclosures in Samsung's declaration is generic to every patent infringement case that makes it through discovery—"strategies," "pressure points and weaknesses," "business customs," "financial information," "budgeting," and a handful of meetings over the course of years.  Samsung fails to identify a single piece of confidential information that is germane to the *Micrografx* case that would not be equally relevant to any patent case against Samsung brought by any law firm.

The logical endpoint of Samsung's position is that Tensegrity should be precluded from ever taking a patent case against Samsung.  Courts have been careful not to extend the disqualification doctrine to let the substantial-relationship and confidentiality exceptions swallow the general rule.  The Fifth Circuit in *Duncan* warned about accepting arguments that lead to this absurd result:

> The statements offered by Merrill Lynch, and accepted by the district court as evidence of a substantial relationship, **could be applied to virtually any law firm that had ever represented Merrill Lynch** or any large brokerage firm. However, the fact that Smathers & Thompson used to represent Merrill Lynch, **even on a variety of matters and over a relatively long period of time**, is alone insufficient to establish the required nexus with the present case.

*Duncan*, 646 F.2d at 1029 (emphasis added).  Nothing in Samsung's motion supplies the required nexus between Tensegrity's past representations of Samsung in patent cases, and its present case against Samsung on different patents and different accused features.  Samsung's

---

[2] *Vertical Computer Sys., Inc. v. Samsung Elecs. Co.* (multiple matters), No. 2:10-CV-00490 (E.D. Tex.); No. 11-cv-00298-DF (E.D. Tex.); No. 11-cv-00189-RS (N.D. Cal.).

motion should be denied.[3]

## II.   LEGAL PRINCIPLES

Disqualification is a "drastic remedy" with harsh consequences—"the party opposing the motion is abruptly deprived of his counsel." *Duncan*, 646 F.2d at 1027-28.  That result is only appropriate where the movant can show a "genuine threat" that confidences will be divulged in a particular case.  *Id.* at 1028.  The rules on disqualification are not applied in a mechanical way because the courts do not wish to "prevent an attorney from ever representing an interest adverse to that of a former client."  *In re Am. Airlines, Inc.*, 972 F.2d 605, 614 (5th Cir. 1992).  Rather, the court must engage in a "painstaking analysis of the facts and precise application of precedent," where the burden is on the movant to "delineate[] with specificity" the nexus between the prior and current cases.  *Id.*  "All of the facts particular to a case must be considered, in the context of the relevant ethical criteria and with meticulous deference to the litigant's rights."  *Secure Axcess, LLC v. Dell Inc.*, No. 6:11-CV-338, 2012 U.S. Dist. LEXIS 61152 *7 (E.D. Tex. Feb. 23, 2012) (quoting *FDIC v. U.S. Fire Ins. Co.*, 50 F.3d 1304, 1314 (5th Cir. 1995)).  Samsung has failed to meet this heavy burden.

The Texas Rules of Professional Conduct provide two limited exceptions to the general rule that an attorney can take a case adverse to a former client: where the new matter is "substantially related" to the old matter, or where there is a "reasonable probability" that confidential information of the former client will be used against the client.  *In re Am. Airlines.* at 614-15.  The Fifth Circuit has noted that the Texas Rules are not broader than its precedents.  *Id.*  Those Fifth Circuit precedents do not permit disqualification based on general knowledge of

---

[3] Micrografx understands that under Local Rule 7.1(g), oral argument will not be held unless otherwise directed by the Court.  Micrografx and its counsel would welcome the opportunity to appear before the Court and address the issues raised by Samsung's motion.  These are issues that Micrografx and its counsel take very seriously.

confidential practices and procedures of a former client, but only based on "the particular practices and procedures which are the subject matter of" the present lawsuit.  *Id.* (citing *Duncan*, 646 F.2d at 1032).

The Texas Rules "are not the sole authority governing a motion to disqualify," and the Court's analysis is "governed by the ethical rules announced by the national profession in light of the public interest and the litigants' rights."  *In re Am. Airlines*, 972 F.2d at 610 (quotations omitted).  The Fifth Circuit "applie[s] the ethical canons contained in the ABA Model Code."  *Id.* The applicable Texas Rule, 1.09, is "identical" to ABA Rule 1.9 "in all important respects."  *Id.* at 615.  The ABA's comments on this rule note that in applying it, "[i]n the case of an organizational client, general knowledge of the client's policies and practices ordinarily will not preclude a subsequent representation."  ABA Model Rule 1.9 (Comment 3).  The comments to ABA Rule 1.9 also note that "a lawyer who recurrently handled a type of problem for a former client is not precluded from later representing another client in a factually distinct problem of that type even though the subsequent representation involves a position adverse to the prior client."  *Id.* (Comment 2).

**III.    SAMSUNG HAS FAILED TO SHOW A SUBSTANTIAL RELATIONSHIP BETWEEN THE *MICROGRAFX* CASE AND A *VERTICAL* CASE ██████**
██████████████████████████████████████

The traditional way for courts to evaluate whether prior representations have sufficient nexus to warrant disqualification is the "painstaking" analysis of whether cases are substantially related.  While identifying probable breaches of the duty of confidentiality is an alternative (and less-frequently used) ground, the Fifth Circuit describes the substantial relationship test as "the focus of our cases."  *In re Am. Airlines*, 927 F.2d at 615.  Samsung's motion barely attempts to satisfy this traditional test.

4

Samsung admits that 99.99% of the work performed for Samsung in the past by Tensegrity attorneys was not substantially related to the *Micrografx* case, and Samsung falls far short of its burden to show that the remaining disputed fraction was substantially related to the *Micrografx* case and warrants disqualification. The sole case Samsung relies on with respect to the substantial relationship test is *Vertical*. The record shows that *Vertical* cannot support disqualification here.

### A. Tensegrity Attorneys Did Not Represent Samsung On Anything Substantially Related To *Micrografx* In The *Vertical* Case

There is no dispute that Tensegrity attorneys Matt Powers and Steve Cherensky ███████

████████████████████████████████████  ████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████. Neither Mr. Powers nor Mr. Cherensky performed substantive work for Samsung on *Vertical*.

Samsung's declaration contains only one paragraph describing the involvement of the Tensegrity attorneys in *Vertical*: "through May 2011, Cherensky communicated with Samsung in-house counsel regarding the *Vertical Computer Systems* matter." Lim Decl. at ¶ 20 (App. at 266). This is partially correct—███████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

███████████████████████████████████████████████. Cherensky Decl. at ¶ 7 (Opp'n App. at 10). Samsung's attorney declaration notably does not include any allegation that Mr. Powers or Mr. Cherensky discussed with Samsung the substance of any part of the *Vertical* case, and does not identify involvement by the Tensegrity attorneys in *Vertical* that relates to *Micrografx*.

During the time that Powers and Cherensky were at Weil, the *Vertical* case was staffed out of Weil's NY office by a team led by partner Tim DeMasi.[4]  Powers Decl. at ¶ 6, Cherensky Decl. at ¶ 7 (Opp'n App. at 4, 10).  This team litigated the case day-to-day, starting with the pleadings and continuing throughout the time that Powers and Cherensky left Weil.  Mr. Powers's and Mr. Cherensky's names appear on a declaratory judgment complaint and an answer to Vertical's complaint, both filed by the Weil team on behalf of Samsung in the *Vertical* case.  App. at 157, 211.  Those pleadings were not prepared by or under the supervision of the Tensegrity attorneys.  Powers Decl. at ¶ 6, Cherensky Decl. at ¶ 7 (Opp'n App. at 4, 10).



Samsung's motion relies heavily on the fact that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.  *See* App. At 276, 318, 329.  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.  Cherensky Decl. at ¶ 9 (Opp'n App. at 11).  None of those entries reflect any substantive work done by Mr. Cherensky related to any confidential Samsung information or any issue with any relationship to the *Micrografx* case.  *Id.*  Rather, in each instance, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.  Cherensky Decl. at ¶ 7 (Opp'n App. at 10).

---

[4] Samsung does not contend that any technical work, to the extent that it occurred, on *Vertical* by other attorneys at Weil should get imputed to the Tensegrity attorneys.  Samsung has waived this argument and it is not addressed herein.

At that time, the primary issue in the case was venue.  Mr. Cherensky and Mr. Powers did not participate in any discussion of infringement, damages, or other merits issues involving confidential Samsung information that arose after January 2011.  Powers Decl. at ¶ 6, Cherensky Decl. at ¶ 7 (Opp'n App. at 4, 10).  Nor did Mr. Cherensky or Mr. Powers give advice to Samsung about these types of issues in *Vertical*.  Powers Decl. at ¶ 6, Cherensky Decl. at ¶ 7 (Opp'n App. at 4, 10).  Samsung has not identified any involvement by Mr. Powers or Mr. Cherensky ███████████████████████████████████████████████████

███████████████████████████████████ .

## B. The *De Minimus* Connection Of Tensegrity Attorneys To The *Vertical* Case Does Not Meet The Legal Test Of Substantial Relatedness

Samsung's motion proposes that disqualification is practically automatic given *any* amount of involvement by Tensegrity attorneys on *any* issue within a case that Samsung characterizes as substantially related.  That is not the law.  Disqualification based on substantial relationship is not applied in a "mechanical" way, but requires a "painstaking analysis of the facts and precise application of precedent."  *In re Am. Airlines*, 972 F.2d at 614.  The Court considers three factors in determining whether a former matter is substantially related to the present matter: "(1) the factual similarities between the current and former representations, (2) the similarities between the legal question posed, and (3) the nature and extent of the attorney's involvement with the former representation."  *Secure Axcess*, 2012 U.S. Dist. LEXIS 61152, at *8 (internal quotation marks omitted).  All three of these factors confirm that Mr. Powers's and Mr. Cherensky's fleeting involvement with *Vertical* does not warrant disqualification.

### 1. The Limited Representation In The *Vertical* Case Is Not Factually Related To This Case

Samsung's motion fails to show a substantial factual similarity for two reasons.  First, Samsung is incorrect that the *Vertical* and *Micrografx* cases are substantially related in

technology—the patents cover distinct concepts and accuse distinct features.  Second, the prior

"representation"  in  *Vertical*  █████████████████████████████████

████████████████████████████████████████████, as confirmed by the handful

of time entries that Samsung cites.

The *Vertical* and *Micrografx* cases concern distinct technological concepts and involve

different accused features.  Micrografx offers the declaration of Garry Kitchen, an expert in the

specific types of vector graphics and software products that are the subject of Micrografx's

patents in suit.  Mr. Kitchen's declaration explains that the Micrografx patents are not similar in

subject matter to the Vertical patents.  Kitchen Decl. at ¶¶ 46-49 (Opp'n App. at 29-30).  As Mr.

Kitchen concludes:

> The Micrografx innovations are specific to the field of computer graphics and are
> not related in any way to technology enabling a system and method for generating
> complex software applications as disclosed in the [Vertical] patents.  The fact that
> vector graphics are one (of thousands) of content components that could be loaded
> from a [Content Management System] does not bring the two disparate
> technologies any closer together.

*Id.* at ¶ 46 (Opp'n App. at 29).

Unsurprisingly, these patents implicate different features of Samsung's devices, which

contain a multitude of hardware and software components.  The *Micrografx* case involves the

functionality of vector-based Google Maps software and the Chrome Browser to provide

interactive vector graphics over a network, and the functionality of Google Maps to access an

external shape and delegate the production of a graphical image of the shape.  Dkt. 1.  These

features are not mentioned in the *Vertical* pleadings, and Samsung's motion ignores the specific

features addressed in the two cases.  App. at 184-85.

Samsung's entire showing on the technological relatedness of *Vertical* and *Micrografx* is

an expert declaration that purports to address the technology while ignoring the core details

provided in the *Micrografx* complaint.  For example, the van Dam declaration generalizes that both cases "involve accusations of patent infringement based on graphical component and library features allegedly found in Samsung's Galaxy smartphones and tablets."  App. at 341.  Dr. van Dam does not address the fact that the *Micrografx* complaint is aimed at specific software features rather than the generic "smartphones and tablets" with "graphical component[s] and library features" that he says unite the two cases.  Nor does he attempt to compare the features of Google Maps and Chrome, which are central to *Micrografx*, to any features that were accused in the *Vertical* case at the time Mr. Powers and Mr. Cherensky were allegedly involved.  Dr. van Dam guesses that the attorneys in both cases would "seek to depose the same Samsung engineers" and consult the same "technical documents, and likely the prior art," App. at 341.  But Samsung does not attempt to identify a single individual at the company that it expects to be involved in both cases, and any overlap between the technical documents, prior art, and witnesses at issue in *Vertical* and *Micrografx* is likely to be small because of the technical differences discussed in Mr. Kitchen's declaration and not considered by Dr. van Dam.  And, in any event, no witnesses were deposed or even identified in *Vertical*, and no documents were requested, collected, or produced by the time Powers and Cherensky left Weil and withdrew from the case.

The kinds of generic similarities relied on by Samsung (computer graphics, libraries, and mobile phone operating systems) are routinely rejected by courts in this Circuit as not providing substantial relatedness.  For example, the court in *Biax Corp. v. Fujitsu Computer Sys. Corp.*, No. 2:06-CV-364, 2007 U.S. Dist. LEXIS 35770 (E.D. Tex. May 16, 2007), found that representations were not substantially related merely because both involved "server architecture".  The court in *Secure Axcess, LLC v. Dell Inc.*, No. 6:11-CV-338, 2012 U.S. Dist. LEXIS 61152 (E.D. Tex. Feb. 23, 2012) held that representations were not substantially related merely because

both involved "computers communicating over a network."  The court in *Power MOSFET Techs., L.L.C. v. Siemens AG*, No. 2:99-CV-168, 2002 U.S. Dist. LEXIS 27557 (E.D. Tex. Sep. 30, 2002) held the movant to an even higher standard, finding that even detailed similarities between cases that both involved the same type of Power MOSFETS, the same Mesh Overlay design, the same issues of P-type material formation, and the depth of P-type material, were not substantially-related cases.  *Id.* at *8-16.  Against that backdrop, Samsung's argument that *Vertical* and *Micrografx* are substantially related because they both involve graphical objects (without even addressing the patent claims in either case) is insufficient to meet Samsung's burden.

Second, and importantly, during the brief time Mr. Cherensky and Mr. Powers were involved in *Vertical*, the case was at the pleadings stage and ██████████████████████ ████████████████████████████████████████████████████████████████████████ █████████████████████  Samsung does not contradict this.  The few billing entries Samsung cites ████████████████████████████████████████████.  Samsung does not identify any substantive infringement-related issue that was litigated before the Tensegrity attorneys withdrew from the case, let alone a substantially related one.  Tellingly, Vertical's *First* set of document requests, which Samsung attached to its declaration to support its substantial-relatedness argument, were not served until March 1, 2012, almost eight months after Mr. Cherensky and Mr. Powers had left Weil to start Tensegrity.  App. at 292-301.

Samsung cites no authority to support an argument that such limited work only at a preliminary stage could support a substantial relationship between the prior case and the present case on the basis of the substantial relatedness of technical issues ***not yet reached***.  In fact, such temporal considerations are relevant to determining disqualification.  In *Bayou Pumps & Prods., Inc. v. Discflo Corp.*, No. 06-0962, 2006 U.S. Dist. LEXIS 90067 (W.D. La. Dec. 13, 2006), the

court declined disqualification on breach of contract issues.  The court found that while the attorney in question had worked on other contracts and some general corporate matters, the contract at issue was an issue that post-dated the representation.  *Id.* at *18-19.  The court noted that the contracts were with different parties, and that even if they had identical language, the relationship would still only be "superficial" rather than substantial because the issues arose after the representation ended.  *Id.* at *20-21.  Analogously, the substantive issues in *Vertical* post-dated the representation by Tensegrity attorneys, and those substantive issues are even less than "superficially" related given that there are different patents involved.  "When dealing with ethical principles, we cannot paint with broad strokes.  The lines are fine and must be so marked." *Id.*  It would indeed paint with broad strokes to find a representation that ended before substantive issues were even reached to be substantially related.

Each of the cases Samsung relies upon for a substantial-relationship disqualification focuses heavily on the relatedness of the actual work performed by the attorneys in the case.  In the *American Airlines* case, the court details the work Vinson & Elkins actually performed for American Airlines over multiple cases, finding specifically that these cases involved "two particular matters at issue in the present case" that made the work substantially related.  *In re Am. Airlines*, 972 F.2d at 621-28.  The court found that VE's work was "extensive" on the substantially-related issues.  *Id.* at 626.  Similarly, in *Texaco, Inc. v. Garcia*, 891 S.W.2d 255 (Tex. 1995), the Texas Supreme Court relied on the disqualified attorney's extensive participation in the related matter, including his preparation of the trial brief, pretrial order, jury charge, trial exhibits, cross-examinations, witness interviews, and numerous other materials. *Texaco*, 891 S.W.2d at 256 n.1.

By contrast, courts have declined to disqualify where there is no "intimate involvement" of the kind in *American Airlines*. In *M-I LLC v. Stelly*, No. 4:09-cv-1552, 2010 U.S. Dist. LEXIS 52736 (S.D. Tex. May 26, 2010), the court denied disqualification where the attorney in question had done work on employment issues for the client but did not work on the particular employment agreements at issue in the subsequent case. *Id.* at *15-17. The court in *M-I LLC* focused on the work the attorney had actually performed, noting that the billing records were "too vague" to conclude that the matters were substantially related. *Id.* Similarly, in *Soverain Software LLC v. CDW Corp.*, No. 6:07-cv-511, 2010 U.S. Dist. LEXIS 26162 (E.D. Tex. Mar. 18, 2010), the court denied disqualification in a patent infringement suit based on work an attorney had done for an SEC filing. Again, the court focused on the actual work the attorney performed, finding that he had "not reviewed the patents-in-suit, pleadings or any litigation related material, nor was he required to do so in order to perform his due diligence duties." *Soverain Software*, 2010 U.S. Dist. LEXIS 26162 at *10-11.

A "painstaking analysis" of the actual representation by Mr. Powers and Mr. Cherensky in *Vertical* shows that there is no substantial relationship to the issues in *Micrografx*. Samsung's entire argument is that the patent infringement cases, considered as a whole when the prior representation did not encompass the whole, are factually related. That contention cannot succeed either on its technical merits or the actual scope of the prior representation.

### 2. The Limited Legal Issues Presented By The Early Stages Of The *Vertical* Case Are Not Related To The Issues In *Micrografx*

The only legal issue Samsung argues is common to both cases is "patent law." Br. at 22. That is not enough. The law is clear that to find a substantial relationship, "any common area of law, writ broadly, will not do." *M-I LLC*, 2010 U.S. Dist. LEXIS 52736 at *18. "The Court will not condone an overly broad reading of subject matter where the remedy required for overlap is

12

'severe'." *Id.* Even Samsung does not contend that "patent law" is enough to make every infringement case substantially related—Samsung has not sought disqualification based on substantial relatedness for any case other than *Vertical*, conceding that Mr. Powers's and Mr. Cherensky's other representations were not substantially related to *Micrografx*.

### 3. The Limited Nature And Extent Of The Prior Involvement Preclude Substantial Relatedness

The "nature and extent" prong strongly favors Micrografx. Samsung does not even address it. The extent of the representation on the *Vertical* case was minimal at best. First, the entire scope of the representation of Samsung in *Vertical* was limited to the preliminary stages of the case, as described *supra* in Part III. B. 3. The Tensegrity attorneys withdrew from the representation before it reached any of the substantive issues that Samsung alleges are the basis of the purported substantial relationship. Second, Mr. Powers's and Mr. Cherensky's actual involvement in the *Vertical* case was even more limited, as described *supra* in Part III. A. Samsung argues for disqualification based on patent issues that were not handled by either Mr. Powers or Mr. Cherensky, but were instead handled after the pleadings stage by other attorneys.

Samsung's request for disqualification based on ███████████████ on narrow and unrelated issues is unprecedented and must be denied.

## IV. SAMSUNG HAS FAILED TO PROVE THE REQUIRED CONNECTION BETWEEN CONFIDENTIAL INFORMATION DISCLOSED IN PRIOR, UNRELATED CASES AND *MICROGRAFX*

The great bulk of Samsung's showing is on representations, facts, and confidences that Samsung concedes are ***not*** substantially related to the present case.[5] The focus is volume—hours

---

[5] Young Jo Lim states that Tensegrity ███████████████████████████████████
█████████. Lim Decl. at ¶ 21 (App. at 266). Mr. Lim continues on to state that "[n]either Tensegrity, nor Powers nor Cherensky, has ever formally terminated their relationship with Samsung." *Id.* at ¶ 22. This is a red herring—Samsung does not contend that it

and number of cases.   But Samsung's declaration makes clear that there is nothing special or *Micrografx*-specific about the information Samsung disclosed in past representations. Everything, including financials, strategies, settlement negotiations, and discovery tactics, would be disclosed to any attorney in any prior representation.   Samsung's theory is that these routine confidences will necessarily be used by Tensegrity in any subsequent patent litigation:

> Here, Samsung is faced with not a mere probability that its confidential information will be used against them, but a ***virtual certainty*** that its most sensitive secrets concerning its approach to patent litigation strategy and its weaknesses in settlement negotiations will be used against them, as that knowledge cannot be segregated from the minds of counsel.

Br. at 16 (emphasis in original).   Essentially, Samsung is arguing that Tensegrity must be barred from ever litigating against Samsung in the entire <u>field</u> of patent litigation because Tensegrity acquired confidential information in other (unrelated) cases in that <u>field</u>.   And Samsung's reason to believe these confidences will be used against Samsung is that they will come up in every patent litigation case, not because those confidences are the subject matter of this specific case. That theory is an unwarranted, and dangerous, expansion of this Circuit's disqualification rules and should be rejected.

While the probability of a breach of confidence is an alternative ground for disqualification, it should not swallow the substantial relationship test by serving as a catchall designed to stop attorneys from being adverse to all former clients in a given field, for all time, after one or more representations in that field.   The confidential-information exception is rooted in the same policy that balances when disqualification is appropriate and when it is not—whether the prior representation (and confidential information) concerns the "particular practices and procedures which are the subject matter of" the current suit.   *Duncan*, 646 F.2d at 1032.   The

---

is a current client of Tensegrity, and Samsung concedes that any disqualification issue is properly addressed under the rules for former clients.

substantial relationship test and the confidential disclosure test are two ways of looking at this same question of nexus.  *Id.*  In *Duncan*, Merrill Lynch requested its former counsel be disqualified in a securities fraud case based on the attorneys having represented them in ten prior matters.  *Id.* at 1028.  The ten matters were also in the securities field, covering "various kinds of securities, margin accounts, Merrill Lynch's relationship with its customers and employees, and the federal and state securities laws."  *Id.* at 1028-29.  Merrill Lynch emphasized that these matters made its outside attorneys "privy to Merrill Lynch's internal 'practices and procedures.'"  *Id.* at 1031.  The Fifth Circuit reversed the lower court, finding that disqualification was inappropriate under either the substantial relationship test or a threat-of-disclosure test.  The Fifth Circuit accepted that the former attorneys may have knowledge of Merrill Lynch's practices and procedures from their lengthy representation over ten matters in the same fields as the present suit, but found that this was not enough.  The court found that Merrill Lynch "must prove that Smathers & Thompson has knowledge of the particular practices and procedures which are the subject matter of Duncan's suit."  *Id.* at 1032.  In rejecting arguments based on these ten matters in the securities field, the court explained that disqualification positions broad enough to capture all typical representations in a field could not support nexus:

> The statements offered by Merrill Lynch, and accepted by the district court as evidence of a substantial relationship, could be applied to virtually any law firm that had ever represented Merrill Lynch or any large brokerage firm.  However, the fact that Smathers & Thompson used to represent Merrill Lynch, even on a variety of matters and over a relatively long period of time, is alone insufficient to establish the required nexus with the present case.

*Id.* at 1029.  While a connection between cases could be shown either by "establishing that the present and previous representations are substantially related or by pointing to specific instances where [Merrill Lynch] revealed relevant confidential information" that is the subject matter of the present suit, neither ground was supported by these ten representations.  *Id.* at 1032.

The primary confidential-disclosure case relied on by Samsung is consistent with this high standard requiring the threatened confidential information to be specific to the later case. In *Dean Witter Reynolds*, the court found disqualification was warranted under both a substantial-relationship test and a threat-of-disclosure test. The law firm at issue, Clements, O'Neill, Pierce & Nickens, L.L.P., represented Dean Witter for over 20 years, specifically handling numerous customer lawsuits over accusations that Dean Witter's Houston (Harris) branch office "churned" the customers' accounts, engaged in unsuitable or unauthorized trading, failed to supervise the customers' brokers, breached fiduciary duties, and violated securities laws. *Dean Witter Reynolds, Inc. v. Clements, O'Neill, Pierce & Nickens, L.L.P.*, No. H-99-1882 2000 U.S. Dist. LEXIS 22852, *1-2 (S.D. Tex. Sep. 8, 2000). After the law firm was let go by Dean Witter, the firm sought to represent a customer of the same branch office on the same claims that it had been defending—churned accounts, unsuitable trades, falsified records, illegal commissions, breaches of fiduciary duties, and violations of securities laws. *Id.* at *2-3. The court found that the law firm should be disqualified under the threat-of-disclosure test because Dean Witter had identified confidences that were specific to the case at hand—not only confidential strategies and tactics, but "especially those relating to claims involving Dean Witter's Harris branch office." *Id.* at *32. The court was particularly persuaded by the fact that the firm's prior representations in suits against the same office on the same issues met the "substantially-related" test as well, informing its conclusion that "relevant" confidential information was likely to be disclosed. *Id.* at *33.

In *Dean Witter Reynolds*, the culpable conduct of a very particular office on a very specific set of claims was at issue in both the prior and present representations. Samsung's showing does not come close to that level of specificity.

### A.  Samsung Has Not Met Its Burden To Show A Risk Of Disclosure Of Practices Or Procedures That Are The Subject Matter Of This Suit

Samsung's evidence is a failure of quantity over quality.  To meet the Fifth Circuit test, Samsung must point to specific "practices and procedures" that are the "subject matter" of the present case rather than general confidences that attorneys would acquire in any case.  A large number of representations that do not meet this test cannot substitute for even a single representation that does.  Samsung's contentions and its declaration fail because they point only to issues generic to every patent-litigation representation of a corporation, attempt to rely on non-confidential or non-Samsung information, and ignore the cautions of other courts in this Circuit against applying the doctrine in a way that would preclude subsequent patent lawsuits against all former clients.

### 1.  Samsung Has Failed To Identify Any Confidential Information Beyond Subjects Generic To Any Patent Litigation

Both sides have submitted declarations from the attorneys with knowledge of what confidential information Samsung disclosed to Mr. Powers and Mr. Cherensky over the course of the dozen matters identified by Samsung, as recited by Young Jo Lim.[6]  A clear picture emerges from those declarations because they are consistent on the key question.  Samsung cannot identify any confidential information, practice, or procedure that will be the specific subject matter of the *Micrografx* case.

All declarants agree that Mr. Powers and Mr. Cherensky handled a number of patent litigations for Samsung over the years.  Each one was litigated according to its own facts.  Powers Decl. at ¶ 3, Cherensky Decl. at ¶ 3 (Opp'n App. at 3-4, 9).  Each one required

---

[6] While Samsung states that Paul Ehrlich of Tensegrity Law Group has also represented Samsung in one past matter, Samsung does not argue that it made any confidential disclosures to Mr. Ehrlich that warrant disqualification, and Young Jo Lim does not identify any such material in his declaration.

confidential disclosures from Samsung on typical patent litigation issues, including technical discovery regarding particular aspects of Samsung products relating to the particular case, damages discovery, and general case strategy. Mr. Powers and Mr. Cherensky do not dispute that they communicated with Samsung, including with Young Jo Lim, on litigation strategy as particular issues arose in each of the cases. Powers Decl. at ¶ 3, Cherensky Decl. at ¶ 3 (Opp'n App. at 3-4, 9). But Mr. Powers and Mr. Cherensky were not general counsel to Samsung at any point, and do not agree that they ever acted as "high-level in-house counsel" to Samsung. Powers Decl. at ¶ 4, Cherensky Decl. at ¶ 5 (Opp'n App. at 4, 9). Mr. Powers and Mr. Cherensky represented Samsung on a case-by-case basis, only for the duration of each matter. Powers Decl. at ¶ 3, Cherensky Decl. at ¶ 3 (Opp'n App. at 3-4, 9). Mr. Powers and Mr. Cherensky did not develop a "litigation playbook," or other general strategies that were meant to apply to future matters involving Samsung, and Samsung did not provide Powers or Cherensky with any "litigation playbook." *Id.* Mr. Powers and Mr. Cherensky handled each defense-side case individually based on its particular facts, as such cases are necessarily handled.

Critically, Mr. Powers and Mr. Cherensky affirm that they do not possess any confidential information or knowledge of Samsung's that pertains to the *Micrografx* case. Powers Decl. at ¶ 7, Cherensky Decl. at ¶ 8 (Opp'n App. at 5, 11). This situation is similar to that confronted by the Fifth Circuit in the *Duncan* case. The court of appeals vacated a disqualification order based on affidavits similar to those here. The attorneys, Smathers & Thompson: (1) denied possessing confidential information relevant to the instant case, (2) had represented Merrill Lynch in a limited number of actions and only for the duration of each matter, and (3) the confidences it did receive pertained only to the matters at hand, not to the instant case. *Duncan*, 646 F.2d at 1032.

18

Samsung's declaration is consistent with this result. Samsung has sworn that a series of topics, including litigation, licensing, settlement, data retention, and others, came up in meetings during Weil's representations of Samsung on a string of patent litigation matters. But Samsung does not identify any confidential information that relates to the *Micrografx* case or a practice or procedure that is the subject matter of *Micrografx*.

Moreover, quantity of contact is not a substitute for quality. In *In re Dennis Drake*, 195 S.W.3d 232 (Ct. App. Tex. 2006), the court conditionally granted a writ of mandamus overturning a disqualification where the attorney in question had represented a former client for 22 years. Dennis Drake represented the Bexar County Appraisal District (BCAD) in tax disputes as outside counsel. *Id.* at 234. Drake later sought to represent taxpayers against BCAD. The court noted that there was "no doubt" that Drake was familiar with the "inner workings" of BCAD, because he had formulated defense strategy, prepared for trial, and attended settlement conferences for BCAD for two decades. *Id.* at 236-37. But the court denied disqualification under the Texas Rules of Professional Conduct because none of this familiarity with strategy related to "specific factual similarities" between the taxpayer lawsuit, and the tax lawsuits he had handled against taxpayers in the past. *Id.* at 237. Despite Drake's knowledge of the "inner workings" of BCAD, the court found that there was no "reasonable probability" of disclosure of confidential information, because he had no information about the particular taxpayer-plaintiffs' properties from BCAD. *Id.*

Samsung's contentions fail for the same reason. Even if Mr. Powers or Mr. Cherensky had knowledge of the inner workings of Samsung litigation department, which they do not, their lack of confidential knowledge that is specific to *Micrografx* is fatal to Samsung's motion.

## 2. Texas Courts In Patent Litigations Have Rejected Samsung's Approach Because It Is Dangerously Overbroad

Texas courts have recently addressed similar threat-of-disclosure arguments in a patent-litigation context, finding no disqualification was warranted.  In *Secure Axcess*, Dell sought to disqualify ex-Weil attorneys based on more than 2000 hours worth of work on two prior patent litigation matters for Dell and Intel.  The court denied the motion.  The court found that "[t]he billing records reveal[ed] that Antonelli and Harrington worked on the case and performed many of the activities typically performed in preparing for patent litigation.  However, Dell has failed to 'point to specific instances where it revealed confidential information regarding its practices and procedures.'"  *Secure Axcess*, 2012 U.S. Dist. LEXIS 61152 at *16-17 (quoting *Duncan*, 646 F.2d at 1032).  While Dell had attempted to show that it had "developed confidential strategies for defending patent infringement cases," and that Antonelli and Harrington had access to these strategies along with confidential financial and engineering materials, the court warned that Dell's motion on these grounds would lead to an absurd result:  "Under Dell's interpretation of the law, AHT is likely precluded from ever representing any client in a patent infringement case against Dell.  This reading of the law is too broad." *Id.* at *12.

More recently, Samsung itself tried and failed to have the same law firm—Antonelli, Harrington & Thompson—disqualified in *E-Contact Techs., LLC v. Apple* in the Eastern District of Texas.  Samsung's arguments in *E-Contact* track the arguments it is making here.  Samsung showed that two of the AHT attorneys worked on Samsung cases at Weil, logging over 1000 hours.  *E-Contact Techs., LLC v. Apple, Inc.*, No. 1:11-CV-426, slip op at 2-7 (E.D. Tex. Sept. 26, 2012)[7].  Samsung declared that the attorneys "received highly sensitive information about Samsung's settlement strategies" and "obtained highly sensitive information about Samsung's

---

[7] While this case appears not to be published, Micrografx respectfully attaches the decision given its detailed reasoning on the questions before this Court in a case involving the same movant.

approach to settling patent disputes and negotiating patent licenses, and Samsung's accounting methods and business practices." *Id.* at 15, App. at 56. The court rejected Samsung's motion, stating that it was "unconvinced that the allegedly confidential information relied upon by Samsung rises to a level above Samsung's general practices and procedures." The court held that Samsung could not carry its burden with these contentions:

> [T]he confidential information at issue involves broad litigation issues – discovery matters, document retention policies, licensing strategies, settlement strategies, litigation hold notices, damages reports, financial information, and reasonable royalty base numbers. Samsung's motion paints these broad topics – which are common to every infringement case – in generalities without specific examples or concrete information.

*Id.* at 17-18, App. at 58-59. The court also warned against the logical conclusion of this type of argument, which bears particular relevance to this case:

> Every attorney who represents a corporate client would be made privy to 'litigation strategy.' If the Court were to disqualify the Antonelli Firm based on the facts alleged here, disqualification could almost always be supported under the confidential information prong.

*Id.* at 17, App. at 58. This case risks the same overbroad result should Samsung prevail.

Samsung's citations are not to the contrary. The cases Samsung cites on page 18 of its brief to show when "knowledge of confidential business information" warrants disqualification are consistent with the Fifth Circuit's strict standard that the confidential information must itself be the subject matter of the present lawsuit.

In *Ullrich v. Hearst Corp.*, 809 F. Supp. 229 (S.D.N.Y. 1992), the attorney in question, Mr. Bernbach, sought to represent former employees of Hearst Corporation against Hearst in employment discrimination cases, including issues of retaliation and illegal discharge. Mr. Bernbach had previously represented Hearst for 20 years on "very closely related" employment cases. *Id*. at 234. Mr. Bernbach was disqualified because he had access to the confidential policies that would actually be at issue in the new cases—Hearst's policies of acting in a

retaliatory fashion, its policies on termination, and its discriminatory motivations. *Id*. at 235. The court's reasoning suggested that Mr. Bernbach's insight into how the company handled litigation and settlement in the past would not be enough to disqualify—if the new case were an "isolated tortious act" like a delivery-truck-related injury, his knowledge would be far less of a threat. *Id*. at 235. The key was that the policies Mr. Bernbach was exposed to were "intimately involved" with the new cases. *Id*. at 234.

In *City of El Paso v. Salas-Porras Soule*, 6 F. Supp. 2d 616 (W.D. Tex. 1998), a corporation (Parallax) successfully disqualified its former tax attorney. The new representation against Parallax concerned alleged fraud in the transfer of funds from the corporation to individuals. The court found that "[e]very facet of the financial affairs of Parallax" would be at issue, including tax matters previously handled by the attorney. *Id*. at 623-4. Thus, the attorney's detailed knowledge of the company's financials warranted disqualification under both a substantial relationship test and threat-of-disclosure test. The attorney's knowledge of the company's finances was directly at issue in the new suit.

Samsung also relies heavily on *Intellectual Ventures I LLC v. Checkpoint Software Techs. Ltd.*, No. 10-1067-LPS, 2011 U.S. Dist. LEXIS 154921 (D. Del. June 22, 2011), but that case found disqualification was supported by the substantial relationship test and did not address a threat-of-disclosure issue. The court found that the law firm had done extensive work on forming and structuring the Intellectual Ventures licensing business that was under attack in the new litigation as a "patent terrorist," and the law firm had helped negotiate the licenses that could be the subject of counterclaims or defenses in the litigation. *Id*. at 29-31.

The unifying principle of these cases is that the movant must prove a nexus between the information disclosed in the prior case and the subject matter of the later case beyond the typical issues that arise in any litigation in the field.  Samsung has failed to meet that burden here.

**3.     Samsung Relies On Materials That Are Not Cognizable Under The Threat-Of-Disclosure Test**

While Samsung's declaration is too generic to meet its burden, many of the types of information Samsung relies on would not support its motion even if they were sufficiently specific.

First, the Lim declaration notes at several points that Samsung considered Mr. Powers a "teacher" and that it learned about the U.S. patent laws from Mr. Powers and Mr. Cherensky. These contentions are irrelevant—they cover information flowing from attorney to client, not confidential information being disclosed by Samsung that could later be exposed.  The Fifth Circuit in *American Airlines* found that while advice of counsel would be protectable if a substantial relationship were at issue, advice of counsel was not the concern of the confidentiality rule:

> [A] court solely concerned with the possible adverse use of confidential information might not be obliged to protect legal advice.  As at least one court has noted, "the concern of the Confidentiality Rule and the case law is the protection of what the client tells his attorney, *not what the attorney tells the client*."  We agree that the confidentiality rule was historically concerned with disclosures. . . .

*In re Am. Airlines*, 972 F.2d at 619 (citation omitted).  Moreover, the type of advice Samsung contends it received from Mr. Powers was basic education on the U.S. patent system, rather than anything remotely *Micrografx*-specific or even confidential.

Second, Samsung focuses on materials like financial data and document storage that, while confidential outside of the context of litigation, are routinely disclosed to one's adversary under protective order in a typical patent litigation.  These materials should not support

23

disqualification because there is no "threat" of disclosure—if they are relevant in a specific case, they would have to be produced to Samsung's opponent. *See, e.g.*, *Power Mosfet Techs.*, 2002 U.S. Dist. LEXIS 27557 at *16 ("[I]f it were relevant enough to warrant disqualification in this instance, the Court believes it should have been produced.").

Samsung has failed to show a threat of disclosure of confidential information that is the subject matter of the *Micrografx* case. The motion should be denied.

## V.     THE PUBLIC POLICY CONSIDERATIONS IN THE ABA RULES FAVOR DENIAL OF SAMSUNG'S MOTION

Samsung is incorrect that federal policy, ethical, or societal interests favor disqualification here. Samsung argues that disqualification is appropriate where there is an appearance of "impropriety," relying on a three-prong test from *In re Dresser Indus., Inc.*, 972 F.2d 540, 544 (5th Cir. 1992). Br. at 24. That case contrasts sharply with the present one and shows that there is no impropriety in Tensegrity's representation of Micrografx in light of the relevant ethical standards.

In *Dresser*, the law firm in question attempted to lead a class action lawsuit against a **current** client, without consent, in direct violation of the ethical rules. *In re Dresser*, 972 F.2d at 544-46. The court found that the law firm's conduct violated **all** of the national ethical standards, and that impropriety was clear because under the ABA guidelines the law firm "must defer" to its current client's wishes. *Id.* at 545. A concurrent representation without consent is prohibited even if the matters are factually distinct. *Id.* By contrast, the ABA rules endorse representations against former clients in factually distinct matters, even where the prior attorney-client relationship was a long-standing one in the same field. ABA Model Rule 1.9 (Comment 2) ("[A] lawyer who recurrently handled a type of problem for a former client is not precluded from later representing another client in a factually distinct problem of that type even [if] the subsequent

representation involves a position adverse to the prior client.").  Here, there is no impropriety in appearance or in fact, for all of the reasons discussed above.  The fact that Tensegrity attorneys recurrently handled substantially-unrelated patent litigation matters for Samsung is no reason for disqualification under the ABA guidelines.

Samsung is also incorrect that societal interests favor disqualification.  The ABA rules reflect a careful balance between duties of loyalty and confidentiality, and the freedom of lawyers to change associations and for new clients to have their choice of counsel.  In discussing the dangers of interpreting the conflict and imputation rules with too much vigor, the ABA states that the rules should not "unreasonably hamper lawyers from forming new associations and taking on new clients" and "should not be so broadly cast as to preclude other persons from having reasonable choice of legal counsel."  ABA Rule 1.9 (Comment 4).  "[I]t should be recognized that today many lawyers practice in firms, that many lawyers to some degree limit their practice to one field or another, and that many move from one association to another several times in their careers."  *Id.*  For these reasons, Samsung is mistaken that the sole reason for Tensegrity taking this representation is financial self-interest, and that this weighs in favor of disqualification.  Micrografx is entitled to its reasonable choice of legal counsel, and this is a valuable consideration recognized by the federal ethical guidelines.  Samsung's motion to deprive Micrografx of its choice of counsel should be denied.

## VI.     CONCLUSION

For the foregoing reasons, Samsung's motion should be denied.

Dated: January 13, 2014          Respectfully submitted:


                    */s/     Paul Ehrlich*

                    G. Donald Puckett
Texas Bar No. 24013358
Lenny Huang
California Bar No. 264386
SKIERMONT PUCKETT LLP
2200 Ross Avenue, Suite 4800W
Dallas, Texas 75201
Telephone:  (214) 978-6600
Facsimile:  (214) 978-6601
donald.puckett@skiermontpuckett.com
lenny.huang@skiermontpuckett.com


*Of Counsel:*
Matthew D. Powers (*pro hac vice*)
CA State Bar No. 104795
matthew.powers@tensegritylawgroup.com
Steven S. Cherensky (*pro hac vice*)
CA State Bar No. 168275
steven.cherensky@tensegritylawgroup.com
Paul Ehrlich (*pro hac vice*)
CA State Bar No. 228543
paul.ehrlich@tensegritylawgroup.com
Aaron M. Nathan
CA State Bar No. 251316
aaron.nathan@tensegritylawgroup.com
Palani P. Rathinasamy (*pro hac vice*)
CA State Bar No. 269852
palani@tensegritylawgroup.com
TENSEGRITY LAW GROUP LLP
555 Twin Dolphin Drive, Suite 360
Redwood Shores, CA 94065

*Attorneys for Plaintiff Micrografx, LLC*

26

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on January 16, 2014, a true and correct copy of the foregoing document was filed with the Clerk of the Court using the CM/ECF system, which will issue an electronic notification of filing to all counsel of record.


   /s/ Paul Ehrlich
Paul Ehrlich