IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| MICROGRAFX, LLC, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 3:13-CV-3599-N |
| | § | |
| SAMSUNG TELECOMMUNICATIONS | § | |
| AMERICA, LLC, *et al.*, | § | |
| | § | |
| Defendants. | § | |

## ORDER

This Order addresses Defendants Samsung Telecommunications America, LLC,

Samsung Electronics American, Inc., and Samsung Electronics Co., Ltd.'s (collectively,

"Samsung") motion to disqualify Matthew Powers, Steven Cherensky, and the Tensegrity

Law Group ("Tensegrity") as counsel for Micrografx [Doc. 32]. After careful consideration,

the Court grants the motion and disqualifies Powers, Cherensky, and Tensegrity.[1]

### I. HISTORY OF THE REPRESENTATION

The instant dispute arises from Powers and Cherensky's prior representation of

Samsung. While Powers and Cherensky were attorneys at Weil, Gotshal & Manges LLP

("Weil"), they represented Samsung in several patent lawsuits over the course of ten years.

In particular, Samsung retained Powers and Cherensky to represent it in *Samsung Elecs. Co.*

*v. Vertical Computer Sys., Inc.*, No. 3:11-CV-189 (N.D. Cal. 2011) and *Vertical Computer*

---

[1]Plaintiff Micrografx, LLC's ("Micrografx") also moves for leave to file a surreply [51]. The Court denies the motion.

*Sys., Inc. v. Interwoven, Inc.*, No. 2:10-CV-490 (E.D. Tex. 2010) (collectively, "*Vertical Computer*"). *Vertical Computer* involved patents relating to software on Samsung's Galaxy smartphones and tablets. Powers and Cherensky oversaw, filed, and signed a complaint on behalf of Samsung in the California action and also responded to Vertical Computer's complaint in the Texas action.

Powers and Cherensky left Weil in 2011 to form Tensegrity. At Tensegrity, they continued to represent Samsung. In 2013, Micrografx filed the instant suit against Samsung. Micrografx alleges that Samsung's Galaxy smartphones and tablets infringe three patents directed to graphical libraries and operations and vector graphics. Tensegrity, Powers, and Cherensky are attorneys of record for Micrografx in the instant case. Tensegrity did not notify Samsung of the potential conflict, nor did they seek a conflict waiver.

## II. STANDARD FOR DISQUALIFICATION

To determine whether a party has behaved unethically, federal courts first look to "the local rules promulgated by the local court itself." *In re ProEducation Int'l, Inc.*, 587 F.3d 296, 299 (5th Cir. 2009). The Local Rules of the Northern District of Texas define "unethical behavior" as "conduct undertaken in or related to a civil action in this court that violates the Texas Disciplinary Rules of Professional Conduct" (the "Texas Rules"). Local Civil Rule 83.8(e). But "parties cannot be deprived of the right to counsel of their choice on the basis of local rules alone." *F.D.I.C. v. U.S. Fire Ins. Co.*, 50 F.3d 1304, 1312 (5th Cir. 1995) (citing *In re Dresser Indus., Inc.*, 972 F.2d 540, 543 (5th Cir. 1992)). Thus, courts also consider "the ethical rules announced by the national profession in light of the public interest

and the litigants' rights" as embodied in the American Bar Association Model Rules (the "Model Rules").  *In re Am. Airlines, Inc.*, 972 F.2d 605, 610 (5th Cir. 1992) (quoting *Dresser*, 972 F.2d at 543).  "[W]hether and how these rules are to be applied are questions of federal law."  *Id.* at 610.

Both the Texas Rules and the Model Rules limit an attorney's ability to represent a current client in a proceeding adverse to a former client where the matters are substantially related.  Texas Rule 1.09 states:

> (a) Without prior consent, a lawyer who personally has formerly represented a client in a matter shall not thereafter represent another person in a matter adverse to the former client:
>  . . .
> (3) if it is the same or a substantially related matter.
> (b) . . . when lawyers are or have become members of or associated with a firm, none of them shall knowingly represent a client if any one of them practicing alone would be prohibited from doing so by paragraph (a).

TEX. DISCIPLINARY R. PROF'L CONDUCT 1.09.  Model Rule 1.9, which also governs conflicts of interest, prohibits similar conduct as Texas Rule 1.09(a).  But, unlike the Texas Rule, Model Rule 1.10 creates exceptions for lawyers who move from one firm to another.  Under the Model Rules, a firm is not disqualified even if one of its attorneys would be if:

> (i) the disqualified lawyer is timely screened from any participation in the matter and is apportioned no part of the fee therefrom;
> (ii) written notice is promptly given to any affected former client to enable the former client to ascertain compliance with the provisions of this Rule . . . and
> (iii) certifications of compliance with these Rules and with the screening procedures are provided to the former client by the screened lawyer and by a partner of the firm, at reasonable intervals upon the former client's written request and upon termination of the screening procedures.

MODEL RULES OF PROF'L CONDUCT R. 1.10.

Consistent with these rules, the Court applies a "substantial relationship" test to determine whether a conflict of interest merits disqualification due to a former representation. Under the "substantial relationship" test, a "party seeking to disqualify opposing counsel . . . must establish two elements: (1) an actual attorney-client relationship between the moving party and the attorney he seeks to disqualify and (2) a substantial relationship between the subject matter of the former and present representations." *Am. Airlines*, 972 F.2d at 614. The parties do not dispute that Powers and Cherensky have previously represented Samsung in several patent-related matters or that they were counsel of record in *Vertical Computer*. Thus, the only question before this Court is whether there is a substantial relationship between the subject matter of the prior representation of Samsung and the present case. If the Court finds that there is a substantial relationship, "the court will irrebuttably presume that relevant confidential information was disclosed during the former period of representation." *Id.* "The test is categorical in requiring disqualification upon the establishment of a substantial relationship . . . ." *Id.* The Fifth Circuit also presumes that "the attorney shared the information with his partners." *In re Corrugated Container Antitrust Litig.*, 659 F.2d 1341, 1346 (5th Cir. 1981), *abrogated in part on other grounds by Gibbs v. Paluk*, 742 F.2d 181, 182–83 & n.5 (5th Cir. 1984).

### III. THE COURT DISQUALIFIES POWERS AND CHERENSKY

Disqualification of a party's chosen counsel is a drastic result that this Court does not impose lightly. But the Court is also "obliged to take measures against unethical conduct

occurring in connection with any proceeding before it." *Am. Airlines*, 972 F.2d at 611 (quoting *Woods v. Covington County Bank*, 537 F.2d 804, 810 (5th Cir. 1976)). Samsung alleges that Powers and Cherensky, now counsel for Micrografx, represented Samsung in thirteen patent lawsuits over the course of ten years, including one case – *Vertical Computer* – that involved similar factual and legal issues as this case. After reviewing the briefs and exhibits presented by both parties, the Court finds that *Vertical Computer* is substantially related to this case and disqualifies Powers and Cherensky.

### A.  This Case is Substantially Related to a Prior Representation

Because the parties do not dispute the existence of an attorney-client relationship between Samsung and Micrografx's counsel, the only issue before the Court is whether there was a substantial relationship between the subject matter of Powers and Cherensky's earlier representation of Samsung and the present litigation. A court will find a substantial relationship only where "the moving party delineates with specificity the subject matters, issues and causes of action common to prior and current representations and the court engages in a painstaking analysis of the facts and precise application of the record." *Am. Airlines*, 972 F.2d at 614. "[T]he party seeking disqualification bears the burden of proving that the present and prior representations are substantially related," but it "need not prove that the past and present matters are so similar that a lawyer's continued involvement threatens to taint the trial." *Id.* at 614–16.

Both *Vertical Computer* and this case involve patent infringement claims relating to similar technology used on Samsung's Galaxy smartphones and tablets.   Def.'s Mot. Disqualify 22.   *Vertical Computer* involved United States Patent Nos. 6,826,744 (the "'744 patent") and 7,716,629 (the "'629 patent").   *See* Def.'s Mot. Disqualify, App. 184 [31-3]. The '744 patent was directed to:

> [a] system and method for generating computer applications in an arbitrary object framework . . . [that] includes creating arbitrary objects, managing the arbitrary objects . . . in an object library, and deploying the arbitrary objects in a design framework for use in complex computer applications.

'744 patent, at [57] (filed Oct. 1, 1999).   The '629 patent was directed to a similar process. '629 patent, at [57] (filed Nov. 29, 2004).   The instant case involves United States Patent Nos. 5,959,633 (the "'633 patent"); 6,057,854 (the "'854 patent"); and 6,552,732 (the "'732 patent").   *See* Am. Compl. ¶ 5 [46].   The "invention" covered by the '633 patent involves:

> a method and system for generating graphical images . . . [that] includes executing a computer program and providing a shape library external to the computer program.   The method further comprises providing the capabilities associated with the shape to the computer program while the application is executing.

'633 patent, col.1 ll.41–49.   In plain language, the patent technology involved in both cases allows graphic designers or third parties to update images or graphical objects in a library and deploy the objects to computer programs without rewriting the underlying programs. *Compare* Am. Compl. ¶ 19 ("New shapes may be added easily without rewriting the underlying computer program. Additionally, shapes may be developed by third parties, addressing particular markets. . . . The invention also provides an architecture that allows for

the integration of additional shapes with an existing computer program without modifying that existing program.") (quoting '633 patent, col.1 l.60 – col.2 l.9) *with* '744 patent, col.2 ll.19–26, 46–49 ("The present invention provides an important technical advantage in that content, form, and function are separated from each other in the generation of the software application.  Therefore, changes in design or content do not require the intervention of a programmer. . . . "[A] user can easily introduce a new look for the application . . . without having to recode all of the objects needed to access content.").

Micrografx attempts to distinguish this case by arguing that it involves the functionality of specific software, Google Maps and the Chrome Browser, "to provide interactive vector graphics over a network" and "to access an external shape and delegate the production of a graphical image of the shape." Pl.'s Resp. Mot. Disqualify 8.  But there is more than a superficial resemblance between the two cases.  Even though *Vertical Computer* may not have focused on precisely the same aspect of Google Maps and the Chrome Browser at issue here, the patented technology in both cases is sufficiently similar that certain legal issues and evidence relating to Samsung Galaxy graphic libraries, software, and operating system may be relevant in both litigations. For example, Cherensky, as counsel for Samsung in *Vertical Computer*, stated that the source code for the Google Maps and internet browser applications could be relevant to that litigation.  *See* Def.'s Reply Mot. Disqualify, App. 19 [50-1].  A similar aspect of these applications is the subject matter of this litigation.  Thus, the legal and factual issues in *Vertical Computer* are "akin to the present action in a way reasonable persons would understand as important to the issues involved."  *Corrugated*

*Container*, 659 F.2d at 1346.  The Court holds that *Vertical Computer* has a substantial relationship to the instant case.

### B. The First Presumption is Irrebuttable

Micrografx contends that even though Powers and Cheresnky's names were on the pleadings in *Vertical Computer*, they never "discussed with Samsung the substance of any part of the *Vertical* case." Pl.'s Resp. Mot. Disqualify 5.  But this argument is unavailing. Samsung has shown that it had an attorney-client relationship with Powers, Cheresnky, and Tensegrity and that the subject matter of a former case is substantially related to the instant litigation.  The presumption that a former client in a substantially related matter disclosed confidential information to the attorney is *irrebuttable*.  *See, e.g.*, *Am. Airlines*, 972 F.2d at 619 ("[B]ecause the substantial relationship test is concerned with both a lawyer's duty of confidentiality and his duty of loyalty, a lawyer who has given advice in a substantially related matter must be disqualified, *whether or not he has gained confidences*." (emphasis added)); *In re Columbia Valley Healthcare Sys., L.P.*, 320 S.W.3d 819, 824 (Tex. 2010) ("If the lawyer works on a matter, there is an irrebuttable presumption that the lawyer obtained confidential information during representation.").  Thus, the degree or extent of Powers and Cheresnky's involvement in the *Vertical Computer* Cases is irrelevant to this Court's analysis.

### IV. THE COURT ALSO DISQUALIFIES TENSEGRITY

If one attorney obtained confidential information during a representation, the Court presumes that he shared that information with his firm. *Corrugated Container*, 659 F.2d at

1346. Though Texas courts consider this presumption irrebuttable, *Nat'l Med. Enters., Inc. v. Godbey*, 924 S.W.2d 123, 131 (Tex. 1996) ("There is, in effect, an irrebuttable presumption that an attorney in a law firm has access to the confidences of the clients and former clients of other attorneys in the firm."), the Fifth Circuit has held that imputation of a conflict to a firm is inappropriate under some circumstances, such as when a migrating attorney never personally represented the client complaining of the conflict, *see, e.g.*, *ProEducation Int'l*, 587 F.3d at 303–04 (declining to impute a conflict where the migrating attorney never personally represented the client); *Corrugated Container*, 659 F.2d at 1346 ("This circuit has exhibited reluctance to apply the latter presumption repeatedly to disqualify new partners of an attorney vicariously disqualified by virtue of his former partners' representing certain clients."). The Model Rules, in effect, allow attorneys to rebut the second presumption by showing that an effective screening mechanism is in place. MODEL RULES OF PROF'L CONDUCT R. 1.10; *see also Manning v. Waring, Cox, James, Sklar & Allen*, 849 F.2d 222, 225 (6th Cir. 1988) ("One method of rebutting the [second] presumption is by demonstrating that specific institutional screening mechanisms have been implemented to effectively insulate against any flow of confidential information from the quarantined attorney to other members of his present firm.").

But none of these potentially mitigating circumstances exists here. Powers and Cherensky had an ongoing relationship with Samsung at their prior firm and represented Samsung in *Vertical Computer*. They continued to represent Samsung after they formed their new firm. These same individual attorneys are counsel of record in this case. And,

given that Powers and Cherensky have participated in this litigation, Tensegrity did not put in place any screening procedures, as required by Model Rule 1.10. The Court therefore presumes that Powers and Cherensky have shared client confidences with their partners and disqualifies Tensegrity from this suit.

### CONCLUSION

For the foregoing reasons, the Court grants Samsung's motion and disqualifies Powers, Cherensky, and Tensegrity from representing Micrografx in this case. All matters in this case are stayed for thirty (30) days to permit Micrografx to obtain substitute counsel. It is further ordered that Powers, Cherensky, and Tensegrity are prohibited from conveying any work product or other information not of public record to any substitute counsel.

Signed March 7, 2014.

David C. Godbey
United States District Judge